FILED IN MY OFFICE
DISTRICT COURT CLERK
11/1/2017 5:04:55 PM
James A. Noel
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

J. LEE,

      Plaintiff,

v.                                                                                              No.   D-202-CV-2017-07891

THE UNIVERSITY OF NEW MEXICO,
a public university,
THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
individually and in their official capacities,
ROBERT G. FRANK, individually and in
his official capacity, LAURA VELE BUCHS,
individually and in her official capacity,
HEATHER COWAN, individually and in
her official capacity, FRANCIE CORDOVA,
individually and in her official capacity,
MEGAN CHIBANGA, individually and in
her official capacity,

      Defendants.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

COMES NOW Plaintiff, J. Lee, by and through his attorneys, ADAMS+CROW LAW FIRM,

(Arlyn G. Crow and Alana M. De Young) and brings this Complaint for Injunctive and Declaratory

Relief and Damages against Defendants. In support thereof, Plaintiff states as follows:

### INTRODUCTION

1.      This action is for due process violations under the New Mexico Constitution, Art.

II, § 18 and under the Fourteenth Amendment to the United States Constitution brought pursuant

to 42 U.S.C. §1983 and pursuant to 28 U.S.C. § 2201 and NMSA 1978, §§ 44-6-1 to -15, as an

actual controversy has arisen between the Plaintiff and Defendants as described in this Complaint,

Ex. A-1

and for sex discrimination under Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §1681, et seq., and 34 C.F.R. § 106.31.

2.      Plaintiff is a former graduate student at the University of New Mexico.

3.      Plaintiff's claims arise out of the decision of the Defendants University of New Mexico ("UNM"), Board of Regents of the University of New Mexico ("Board of Regents"), Robert G. Frank ("Defendant Frank"), Laura Vele Buchs ("Defendant Vele Buchs"), Heather Cowan ("Defendant Cowan"), Francie Cordova ("Defendant Cordova"), Megan Chibanga, ("Defendant Chibanga"), to improperly impose disciplinary, and other actions against Plaintiff, to include expulsion from UNM, for alleged "sexual misconduct" in violation of Plaintiff's state and federal constitutional, statutory, and common law rights.

4.      Plaintiff affirmatively states that he has never engaged in any alleged "sexual misconduct," that the allegations leveled against him by Defendants were false, and that there was never evidence sufficient to support disciplinary action against him by Defendants.

## JURISDICTION AND VENUE

5.      At all times relevant to this Complaint, Plaintiff was a resident of the City of Albuquerque, County of Bernalillo, State of New Mexico.

6.      Defendant UNM is a state university, entitled to all vested benefits so enacted by Congress.

7.      At all times relevant to this Complaint, Defendant UNM provided education and educational services to students within the State of New Mexico.

8.      Defendant UNM is managed by the Defendant Board of the Regents of the University of New Mexico.  Defendant Board of Regents have the power to sue and be sued, and

have the power and duty to enact laws, rules, and regulations for the government of UNM. See NMSA 1978, §21-7-1, et seq.

9.      Defendant Board of Regents have general supervisory control of UNM and of the actions and inactions of its employees, officers and agents acting in their official capacity for UNM.

10.     Defendant Board of Regents, individually and as a body corporate, were acting within the scope of their employment, and under color of state law, at all times relevant to this Complaint.

11.     Defendant Robert G. Frank was, at all times relevant, the President of the University of New Mexico and, upon information and belief, resides in the State of New Mexico.

12.     Defendant Laura Vele Buchs was, at all times relevant, the University of New Mexico EEO Compliance Specialist and, upon information and belief, resides in the State of New Mexico.

13.     Defendant Heather Cowan was, at all times relevant, the University of New Mexico Title IX Coordinator and, upon information and belief, resides in the State of New Mexico.

14.     Defendant Francie Cordova was, at all times relevant, the Director for the University of New Mexico's Office of Equal Opportunity Office and, upon information and belief, resides in the State of New Mexico.

15.     Defendant Megan Chibanga was, at all times relevant, the Student Conduct Officer for the University of New Mexico's Office of the Dean of Students and, upon information and belief, resides in the State of New Mexico.

16.     The above-named individuals are sued both in their official and individual capacities.

3

17.     All acts or omissions which are the subject of Plaintiff's Complaint occurred in Bernalillo County, New Mexico.

18.     This Court has subject matter jurisdiction over all claims asserted by Plaintiff.

19.     This Court has personal jurisdiction over Plaintiff and Defendants.

20.     Venue is proper in the Second Judicial District Court.

**FACTUAL BACKGROUND**

21.     Plaintiff had obtained his undergraduate degree from a University of California school, with honors, and had been attending UNM for four years to obtain his Ph.D.

22.     Prior to his expulsion from UNM, Plaintiff had passed his comprehensive exams with distinction and needed only to finish his dissertation to receive his doctoral degree from UNM.

23.     Plaintiff is respected by his professors and mentors at UNM, had never been accused of or sanctioned by any school for any reason, and does not have a criminal record or history, absent speeding tickets.

24.     Plaintiff applied to a graduate program at UNM in August of 2012 and was accepted.

25.     The application, which was signed by Plaintiff, identified and explained the agreement between UNM and Plaintiff and included the policies and procedures the parties shall follow in disciplinary actions.

26.     Plaintiff accepted the terms and conditions of attending the graduate program at UNM, and from August 2012 to May 2016 Plaintiff paid tuition to, and was a graduate student at, Defendant University of New Mexico in Bernalillo County, New Mexico.

27.     Plaintiff was a graduate student at the University of New Mexico during the 2015-2016 school year.

28.     Defendant permitted Plaintiff to enroll in dissertation classes, and pay tuition for, the fall semester of 2016, but barred Plaintiff from attending such classes.

29.     During his time at UNM, Plaintiff was working towards obtaining, and had substantially completed the requisites for, his doctoral degree.

## UNIVERSITY POLICIES AND PROCEDURES

30.     At the time of the events forming the basis of the Complaint, UNM had multiple overlapping and often conflicting policies and procedures related to student misconduct, including procedures on how to handle allegations of sexual harassment and sexual assault.

31.     Upon information and belief, Defendant Franks and Defendant Board of Regents, failed to properly institute policies and procedures that would allow for fair, unbiased and impartial investigations, findings, hearings and disciplinary sanctions against Plaintiff.

32.     Upon information and belief, Defendants instituted biased and unfair University Policies regarding sexual conduct knowing that such policies would violate Plaintiff's Due Process rights.

33.     Under the University's policy entitled Student Grievance Procedure, which "is intended to provide Procedures for the resolution of disputes of an academic nature between students and University faculty, as well as Procedures for handling student disciplinary matters[,]" a UNM student may be provided an "administrative" hearing with the Student Conduct Officer, or a "formal" hearing with the "Student Conduct Committee."  As the Student Grievance Procedure identifies, the latter "option allows the student accused of misconduct to respond to the charges, present witnesses on his or her own behalf and question witnesses."

34.     If a formal hearing is conducted before the Student Conduct Committee, there are a number of procedural safeguards in place.  For instance, a Student Conduct Officer conducts and

prepares an investigation report, which includes, among other things, "summaries of interviews with the complainant, the accused student and third-party witnesses; photographs of the relevant site(s); other relevant evidence; and a detailed analysis of the events in question."  This report is provided to the accused student, the complainant, and the Student Conduct Committee prior to the hearing. At the hearing, both an accused student and the complainant may present witnesses and evidence.  The Student Conduct Committee then decides whether there was a violation of the policy at issue and, if the committee determines there was a violation, imposes a sanction.

35.     An exception to this Procedure is for students alleged to have engaged in sexual misconduct. Unlike the Procedure utilized by Defendants for handling disciplinary matters and conduct that is nonsexual in nature, for students accused of sexual misconduct, Defendant UNM's Office of Equal Opportunity ("UNM OEO") conducts an "investigation" to determine whether there is "Probable Cause" of a policy violation. Only after this investigation is an accused student provided the opportunity to have a hearing; that hearing, however, is strictly limited to only determining the severity of any sanctions for violation of University policy.

36.     Defendant UNM's OEO, acting through Defendant Cordova, Defendant Vele Buchs and Defendant Chibanga, the Board of Regents, acting through its Regents, the Office of the President, acting through Defendant Frank, and the Office of the Dean of Students, acting through Defendant Chibanga, specifically do not follow the Student Grievance Procedure, or its procedural safeguards, for the investigation and/or adjudication of students accused of sexual misconduct in violation of University Policy Nos. 2730 ("Sexual Harassment" policy) and 2740 ("Sexual Violence and Sexual Misconduct" policy). Instead, such claims are referred to the UNM OEO, and the process Defendants provide under its OEO "Discrimination Claims Procedure" is fundamentally different, and less formal, for such students. At the time of the events forming the

basis of this Complaint, this separate process for students accused of sexual misconduct did not identify the investigative process nor what would occur during the investigative process.

37.     Critically, for students accused of sexual misconduct, a committee is never formed and a hearing is never provided to determine whether a violation of the code occurred. Instead, UNM OEO, acting through Defendants, determines whether it will accept a matter for investigation.  If it does, then the OEO investigator conducts an "investigation" to determine, in his or her discretion, whether there was "Probable Cause" to find that a student violated University Policy Nos. 2730 and 2740.

38.     The only formal investigative guidelines for UNM OEO is that UNM OEO meets with the complaining party and the accused to determine the scope of the investigation and to "explain" its procedure.

39.     The UNM OEO investigator then interviews the complaining student.

40.     A statement of the allegations is drafted by UNM OEO for the complainant.

41.     The accused student is then provided a copy of the allegations drafted by UNM OEO and given an opportunity to provide a statement and answer questions in response to the investigation.  The accused student is only provided a summary of the allegations against him "verified" by the complaining student.

42.     After meeting with the complaining student and the accused student, Defendant UNM policy provides that the OEO investigators will "investigate" the allegations. The UNM OEO investigator has complete discretion to determine the scope of the investigation, to gather and analyze information during the "investigation," and to identify documentation and witnesses "necessary" to determine whether a policy violation has occurred.

43.     The UNM OEO investigator is given unbridled discretion to determine whether the evidence presented, including statements of witnesses, is or is not credible or relevant to the allegations raised against the accused student.

44.     UNM OEO investigator does not disclose the "witnesses" identified or interviewed during its "investigation."

45.     At no time during the investigation process is the accused student able to question his accuser or any other witnesses, either directly or indirectly.

46.     Save for the accused student's initial statement to UNM OEO, the accused does not have any opportunity to weigh in on the investigation, to attend any witness examinations, or to take any action to test the credibility or the weight of any evidence reviewed by the UNM OEO investigator.

47.     If after this "investigation" UNM OEO finds it is "more likely than not"—*i.e.*, by a mere preponderance of the evidence—that the accused student committed an act of sexual violence or misconduct in violation of University policy, UNM OEO issues a Preliminary Letter of Determination (PLD).

48.     The identity of witnesses interviewed by UNM OEO is not stated in the PLD, nor is there any opportunity for the accused student to question the witnesses or evidence considered by the OEO investigator in making the "Probable Cause" determination.

49.     In response to the PLD, the accused student is only allowed an opportunity to provide "new" information the OEO has not considered or previously seen which would require additional investigation or consideration by OEO.  The accused, however, does not have *all* of the information relied upon by UNM OEO and does not know, specifically, what information would be deemed "new."

50.     Under University policy, if UNM OEO decides that "Probable Cause" exists for a violation of University policy despite the "new" evidence provided, it issues a Final Letter of Determination ("FLD"). The FLD is then forwarded to the Dean of Students Office "to determine the sanction."

51.     Defendant UNM, through its Regents, officers, and employees, promises that both the accused and the accuser will have "equal rights" to "present evidence" to the OEO during the investigation. Yet, students accused of sexual assault are not afforded a hearing as to probable cause of a policy violation, are not permitted to question witnesses, and are presumed guilty until proven otherwise.

52.     The only recourse an accused student has to contest the OEO's Probable Cause finding is to appeal to Office of the UNM President and the Defendant Board of Regents, who have "discretionary authority" to review final determinations made by the OEO and will accept review only in "extraordinary cases."

53.     If the UNM President and/or Defendant Board of Regents refuse the accused student's request to review the FLD, then the UNM OEO's "Probable Cause" decision is referred to the Dean of Student's Office for a determination of sanctions.

54.     In cases where there are allegations of sexual misconduct, there is no hearing regarding the alleged policy violation. Instead, the UNM OEO investigator becomes the investigator, the judge and the jury regarding whether a policy violation occurred, and the FLD's "Probable Cause" determination is *the* evidence of the policy violation. The only "hearing" the accused is allowed to attend goes to the severity of any sanction, and any and all other evidence presented at the sanctions hearing may go only to "determine the sanction to be imposed."

55.    During the "sanctions hearing," the Student Conduct Officer or the Student Conduct Committee do no determine whether a policy violation occurred.  The FLD is assumed correct by the Student Conduct Officer or Student Conduct Committee and the Student Conduct Officer and the Student Conduct Committee only make sanctioning determinations.

56.    Defendant UNM allows an accused student to have an advisor, including an attorney advisor, present in the sanctions proceeding, but that advisor is "not authorized to speak on behalf of the individual they are advising, requiring the accused to present his own case."  The accused student, however, cannot argue regarding the policy violations

57.    The Defendant UNM affords students who violate policies- outside the context of sexual assault- greater due process than those afforded persons who are alleged to have committed such acts of sexual misconduct.

58.    Defendant UNM's sexual conduct policy violations are inherently biased against male students accused of sexual misconduct. Not only are such students provided less process than those students accused of other misconduct, but Defendants' inadequate process assumes at every stage of the process that the accused male student has violated Defendant policy; and in fact, prevents accused male students from having a full and fair opportunity to defend against serious charges of sexual misconduct.

59.    Upon information and belief, Defendants, acting in their official capacity, are determined to find male students accused of sexual misconduct guilty—regardless of the lack of evidence or the merit of the allegations—in order to "look good" for the Department of Education and to address the mounting public and federal pressure and scrutiny that Defendants are not appropriately responding to allegations of sexual assault.

60.     Defendant UNM promises students its UNM OEO investigators are trained in investigating allegations of sexual violence and misconduct; however, the UNM OEO investigators responsible for investigating complaints of sexual misconduct were provided only intermittent, inconsistent, minimal, and wholly insufficient training on how to conduct investigations and adjudications, and specifically how to collect and analyze witness statements and other evidence, which resulted in inadequate, unreliable and biased investigations and in inconsistent as well as unreliable determinations of credibility.  Not only did Defendants fail to provide adequate training, but upon information and belief, UNM's EEO Specialists are pressured by Defendant Cordova, Defendant Cowan, and /or Defendant Board of Regents, to just get investigations "done".

61.     Defendant UNM, acting through Defendants, gives unbridled discretion to under- and/or improperly trained and over- extended investigators to determine whether a student has engaged in sexual misconduct, and such investigators act as the fact finder, the jury, and the judge during the process of adjudicating sexual misconduct complaints.

### "INVESTIGATION" AND SANCTIONS HEARING OF PLAINTIFF

62.     Upon information and belief, on or around September 21, 2015, Defendant UNM's OEO received a report from the University of New Mexico Police Department regarding an alleged sexual incident involving Plaintiff and another person, C.H. ("Complainant").

63.     On September 21, 2015, Defendant UNM informed Plaintiff he was "banned" from campus. Yet, Defendant UNM allowed Plaintiff on campus for over ten (10) months until his expulsion in July of 2016.  The Defendants did not deem Plaintiff a threat to any of the persons on campus during this ten (10) month period.

64.     UNM OEO, through Defendant Cordova, Defendant Cowan and/or Defendant Vele Buchs, reached out to Complainant on September 21, 2015.

65.     On or around September 24, 2015, which was one day prior to Defendant Vele Buchs's and Defendant Cordova's meeting with Complainant and one day prior to Complainant submitting a verbal complaint to UNM OEO, Defendant Cordova and Defendant Cowan met with Plaintiff to "discuss OEO processes and procedure, [Plaintiff's] rights and responsibilities, confidentiality and the University's anti-retaliation policy." Defendant Cordova and Defendant Cowan informed Plaintiff they had not yet spoken with Complainant.

66.     Upon information and belief, Defendant Vele Buchs and Defendant Cordova assumed that Plaintiff violated Defendant UNM policy and acted consistent with that assumption.

67.     On or around September 25, 2015, Complainant provided a "verbal complaint" to Defendant Vele Buchs and Defendant Cordova about Plaintiff.

68.     Upon information and belief, Defendant Vele Buchs and/or Defendant Cordova took notes and then transcribed a summary of the conversation, which later became the complainant's statement against Plaintiff. On or about October 5, 2015, Defendant Vele Buchs forwarded a copy of Complainant's Statement to Complainant and asked that the Complainant review it.

69.     On October 16, 2015, Defendant Vele Buchs presented Plaintiff with a written document that purportedly was Complainant's iteration of the incident in question.  Plaintiff was requested to respond to the Complainant's statement.

70.     At this time, Defendant Vele Buchs did not advise Plaintiff that UNM OEO was going to conduct an investigation to make a "probable cause" determination regarding the allegations raised against Plaintiff; that Plaintiff faced possible expulsion if Defendant Vele Buchs,

12

Defendant Cordova and/or Defendant Cowan unilaterally determined that there was "probable cause" for a UNM policy violation for sexual misconduct; that Plaintiff would not have an opportunity to examine or cross-examine witnesses or his accuser regarding any information presented during the investigation; that once the OEO Officer finds "probable cause," the only recourse for the Plaintiff would be to appeal to the Defendant Board of Regents and the President of UNM, which was discretionary; or that any "probable cause" finding by the OEO would be final and could not be challenged at any sanctions hearing.

71.    Neither Defendant Cowan, Defendant Cordova nor Defendant Vele Buchs provided Plaintiff the written policies or procedures related to the investigative process or the possible sanctions for violating such procedures.

72.    On or around October 27, 2015, Plaintiff was interviewed by Defendant Vele Buchs regarding the allegations raised by Complainant in Complainant's Statement.

73.    During the interview, Defendant Vele Buchs was accusatory and hostile towards Plaintiff.

74.    At all times during the interview, and in written statements to UNM OEO and Defendant Vele Buchs, Plaintiff denied—and continues to deny—the accusations raised by Complainant.

75.    Plaintiff pointed out a number of inconsistencies between Complainant's statement and the events of that evening, denied any allegation that any physical contact between Plaintiff and Complainant was non-consensual, and presented documents, to include screen shots of text messages from Complainant, that contradicted Complainant's purported claims.

76.    On that same day, Plaintiff also provided Defendant Vele Buchs with a written statement addressing and identifying the contradictions in Complainant's statement.

77.     Based upon this alleged "investigation," on or around January 20, 2016, UNM, through UNM OEO, made a preliminary "Probable Cause" finding in a Preliminary Letter of Determination ("PLD"). The PLD stated, "[t]he Office of Equal Opportunity (hereinafter OEO) is prepared to issue findings of PROBABLE CAUSE with regard to [Complainant's] assertion of non-consensual sexual activity against [Plaintiff]" and was signed by Defendant Vele Buchs, Defendant Cowan, and Defendant Cordova.

78.     The PLD authored and approved by Defendant Vele Buchs, Defendant Cowan and Defendant Cordova is biased against Plaintiff, is replete with factual and legal determinations based on inconsistent facts, contains hearsay statements without any indicia of trustworthiness, makes credibility determinations regarding unnamed witnesses without any indicia that any investigator tested the factual theories of any of the witnesses, and is merely an iteration of facts to support a probable cause finding against Plaintiff.

79.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, conducted all investigations related to the claims alleged by the Complainant.

80.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, decided the scope and breadth of the investigation.

81.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, made the determination as to which witnesses to interview, as well as credibility of witnesses.

82.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, made the determination as to the weight that should be given to any information provided them during the investigation.

83.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, made the determination as to whether Plaintiff violated Defendant UNM Policy.

84.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, allowed counsel for Plaintiff to be present at meetings between Plaintiff and UNM's OEO, but did not allow counsel to represent Plaintiff at any meeting that he had with the OEO and/or Defendant Vele Buchs.

85.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, did not disclose the names of any witnesses to Plaintiff that the EEO Specialist interviewed during the investigation.

86.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova did not allow Plaintiff to be present for or to review/listen to any interviews conducted of any "witnesses."

87.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, did not conduct a hearing before issuing its "Probable Cause" determination against the Plaintiff.

88.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, did not allow Plaintiff, or his counsel, to examine or to cross-examine, in any manner, any witnesses or the Complainant.

89.     Defendant UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, is the only body that makes the "Probable Cause" finding.

90.     Defendant Vele Buchs, Defendant Cowan and Defendant Cordova, for the very first time, informed Plaintiff through the PLD that he violated University Policy Nos. 2730 ("Sexual

Harassment" policy) and 2740 ("Sexual Violence and Sexual Misconduct" policy). Prior to receiving the PLD, Plaintiff had never been advised that a "Probable Cause" determination may be made against him during the investigation.

91.     During the investigation, Plaintiff was never given an opportunity to be privy to the investigative process, to rebut or counter the evidence, to examine or otherwise question any witnesses, or to present Plaintiff's story in front of an impartial panel.

92.     Plaintiff was never provided with any actual witness statements.

93.     No witness was asked to sign a statement.

94.     No witness was given an opportunity to review his or her statement.

95.     No witness statement was recorded.

96.     No questions were presented to the witness in writing.

97.     No witness was given a copy or summary of his or her statement.

98.     Inconsistencies in witness statements were never analyzed or followed up on.

99.     The witness interviews were not complete or thorough and were not designed to elicit information that would bring forth the truth, but were intended to elicit information against the Plaintiff.

100.     Plaintiff was summarily determined to be "not credible" and was only given an opportunity to present "new evidence" to Defendant Vele Buchs and Defendant Cowan after the PLD was issued by Defendant UNM OEO. The PLD made clear that Defendant UNM "OEO w[ould] move forward with the [Probable Cause] determinations unless additional new factual information c[ould] be provided.  The additional information must reveal facts not yet discovered during the course of the investigation."

101.    Because Defendant Vele Buchs did not allow Plaintiff to be involved in the investigative process, he was not wholly certain what was, or was not, discovered by the investigation conducted by Defendant Vele Buchs. Thus, it was never clear to Plaintiff what, specifically, Defendant Vele Buchs, Defendant Cordova, Defendant Cowan or Defendant UNM OEO would deem to be "new evidence."  Equally, Plaintiff could not determine whether there were any "new facts" that could be gleaned from the witnesses because the witnesses were not disclosed to Plaintiff.

102.    Moreover, the PLD stated that Plaintiff had only two weeks to respond with any new "facts," even though Defendant Vele Buchs and Defendant UNM OEO had months to conduct an investigation and prepare their investigative report.

103.    On or about January 28, 2016, Plaintiff retained counsel.

104.    In response to the PLD, Plaintiff presented UNM OEO with "new" information.

105.    Defendants only permitted Plaintiff to present this evidence in "bullet points" to the UNM OEO. Plaintiff was not permitted to make any argument or present a theory of the case based upon these facts, and was denied by Defendant Vele Buchs the opportunity to place that new information "in context," *i.e*., to show why the additional information that had been discovered was pertinent to the OEO's determination in this case.  Essentially, this new evidence was ignored by Defendant Vele Buchs, Defendant Cowan and Defendant Cordova.

106.    On or around February 25, 2016, UNM's OEO issued a Final Letter of Determination ("FLD") finding that Plaintiff "subjected [Complainant] to non-consensual sexual activity, in violation of University Policy #2740 Sexual Violence and Sexual Misconduct and University Policy #2730 Sexual Harassment." Specifically, Defendant UNM OEO found that Plaintiff allegedly subjected Complainant to non-consensual sexual activity because she was too

incapacitated, pursuant to Policy No. 2740, to consent to sexual activity.  Plaintiff denied and continues to deny these accusations.

107.    UNM's OEO through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, made all factual determinations that were contained in the PLD and FLD.

108.    UNM's OEO, through Defendant Cowan, Defendant Vele Buchs and Defendant Cordova, drafted the PLD and the FLD.

109.    The findings in the FLD and the PLD draw all inferences in the light most favorable to the Complainant and against the Plaintiff and are biased against the Plaintiff.

110.    In response to the FLD and PLD, Plaintiff requested an appeal to the UNM President's Office (Defendant Frank) and the UNM Board of Regents (Defendant Board of Regents).

111.    In its appeal, Plaintiff identified numerous factual inconsistencies identified in the PLD and FLD, provided a rational explanation for certain behaviors, and identified the contradictions and inconsistencies of unnamed witnesses.

112.    Defendant Frank promptly denied the request for an appeal, stating that it could only engage in a review of the underlying "investigation" and determination where "extraordinary circumstances" required the same. Defendant Frank ignored the obvious and glaring inconsistencies in the PLD and FLD and summarily found that there were "sufficient facts in the record to support OEO's decision[.]"

113.    Defendant Board of Regents did not even respond to Plaintiff's request for review.

114.    After Defendants summarily denied Plaintiff's appeal, he was referred to the UNM Dean of Students for sanctions.

115.    On April 22, 2016, Plaintiff was contacted by Defendant Chibanga from the University's Dean of Students Office to begin the sanctions process.  Plaintiff met with Defendant Chibanga on or around May 19, 2016. At the meeting, Defendant Chibanga advised Plaintiff that he could refuse to hold a sanctions hearing, have a "formal" sanctions hearing in front of a panel, or a have an "administrative" sanctions hearing in front of Defendant Chibanga.

116.    Plaintiff requested a determination as to whether he faced expulsion in this case so he could determine which hearing he should request.  Defendant Chibanga never advised Plaintiff whether he was facing possible expulsion, but merely pointed Plaintiff to the possible sanctions, which included everything from a verbal warning to expulsion, dismissal and barring from campus.

117.    Plaintiff was also advised by Defendant Chibanga of certain limitations on the sanctions hearing. Defendant Chibanga advised Plaintiff that his current counsel, who was present at the meeting, could not present any evidence or information at the sanctions hearing and could not speak at the sanctions hearing, but that he could only "pass notes" or "whisper" in Plaintiff's ear. Defendant Chibanga also advised Plaintiff that the sanctions hearing was not "an evidentiary hearing," and that the "Probable Cause" finding "was not up for debate" and would not be "challenged" at the sanctions hearing.

118.    Plaintiff chose an administrative hearing over which Defendant Chibanga presided. According to Defendant Chibanga, any information provided by Plaintiff had to go to the issue of sanctions only. Plaintiff presented information at the sanctions hearing on how the sanction would affect Plaintiff, how it has already affected Plaintiff, among other things.

119.    At the sanctions hearing, Defendant Chibanga asked Plaintiff questions about underaged drinking and alcohol. This was after Defendant Chibanga had specifically stated in her e-mail that the sanctions hearing was not an evidentiary hearing.

120.    It was never disclosed to Plaintiff that questions related to drinking and alcohol would be posed to Plaintiff.

121.    The notice of the sanctions hearing did not advise Plaintiff that allegations of underage drinking would be part of the calculus in the sanction.

122.    Underaged drinking was not listed as a violation of policy in either the PLD or the FLD. In fact, both Defendant Cowan and Defendant Buchs individually stated to Plaintiff, on separate occasions, that alcohol would not be the focus of the OEO investigation.

123.    On or around July 6, 2016, Defendant Chibanga issued a sanction letter expelling and barring Plaintiff from campus based on the questions asked of Plaintiff related to drinking and the PLD and FLD.

124.    Plaintiff appealed the sanction decision by Defendants. Both Defendant Frank and Defendant Board of Regents found that the facts supported the sanction of expulsion and barring from campus, even though there were numerous inconsistencies in the FLD and the PLD and even though the circumstances did not warrant such a severe sanction.

125.    As a whole, Defendants failed to provide Plaintiff a fair, impartial investigation, failed to follow their own policies in "investigating" the allegations of sexual misconduct against him, failed to afford Plaintiff due process in disciplining him based upon the faulty investigation, and failed to follow their own policies in imposing sanctions upon him.

126.    From the outset Defendants railroaded Plaintiff in order to find him guilty of the accused sexual misconduct, regardless of the lack of evidence or merit in the allegations, because of Defendants' gender bias against male students, Defendants' self-interest in their reputation amid scrutiny and pressure from the federal government to discipline male students, and Defendants' financial interests in receiving federal funding.

127.    Upon information and belief, Defendants were aware of the flawed disciplinary process, but failed or refused to implement adequate policies and procedures.

128.    Upon information and belief, Defendants were aware that UNM employees, acting in their official capacity, were violating the due process rights of male UNM students, including Plaintiff, but recklessly failed or refused to properly supervise or train such employees.

129.    Plaintiff's expulsion was the result of a deeply flawed process under which Defendants blatantly violated Plaintiff's due process rights.

130.    At the time of the expulsion, Plaintiff had completed his requisite Ph.D. coursework, passed his comprehensive examinations with distinction, and only needed to finish his dissertation to receive his doctoral degree. Defendant UNM permitted Plaintiff to register, and pay tuition, for his dissertation classes during the Fall 2016 semester.

131.    Yet, as of August 23, 2016, Plaintiff has been banned from campus and has not been able to complete his doctoral program or to set foot on UNM Campus.

132.    Plaintiff will likely be unable to be admitted to any other university given his status.

133.    The Defendants' continued actions against Plaintiff have caused and are causing substantial, immediate, and continuing damages. Expulsion from Defendant UNM for allegations of sexual misconduct has resulted in Plaintiff being denied the benefits of education at his chosen school, has damaged his academic and professional reputations, and will affect his ability to enroll at other institutions of higher education and to pursue a career.

## "DEAR COLLEAGUE LETTER" AND DEPARTMENT OF JUSTICE REPORT

134.    This case arises amidst a growing national controversy stemming from the Federal Department of Education, Office of Civil Rights' ("OCR") threats to withhold federal education funds to compel colleges and universities to address "sexual violence" on their campuses.

135.    Defendant UNM receives federal funding and financial assistance within the meaning of 20 U.S.C. 1681(a) and is otherwise subject to Title IX. Defendant UNM maintains an Office of Equal Opportunity ("OEO") pursuant to Title IX, and is supposed to have a trained OEO Investigator and Title IX Coordinator.

136.    Colleges and universities across the country have been subjected to mounting public scrutiny and pressure from OCR for being "too lax" on addressing campus sexual assault. Indeed, OCR has been pressuring schools to aggressively pursue investigations of sexual assaults on campuses.

137.    On April 4, 2011, OCR sent a "Dear Colleague Letter" to colleges and universities with instructions on how to comply with Title IX when investigating and resolving complaints of sexual misconduct. The Dear Colleague Letter imposed a number of mandates making it more difficult for male students accused of sexual misconduct to defend themselves against such accusations. For instance, it requires schools to adopt a relatively low burden of proof—"more likely than not"—in cases involving sexual misconduct, including assault. The Dear Colleague letter also provides that schools should "minimize the burden on the complainant," and focus more on victim advocacy. In so doing, the Dear Colleague Letter essentially equated "victim/complainants" in sexual misconduct proceedings as being females who must receive preferential treatment.[1]

---

[1] Notably, after the events forming the basis of this Complaint, on or around September 22, 2017 the Department of Education OCR provided notice it was withdrawing the 2011 Dear Colleague Letter, explaining in a press release that the withdrawn document "**ignored notice and comment requirements, created a system that lacked basic elements of due process and failed to ensure fundamental fairness**." See https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct.

138.    The Department of Justice ("DOJ") shares authority with OCR for enforcing Title IX, and may initiate an investigation or compliance review of schools; if a voluntary resolution cannot be reached, the DOJ may initiate litigation.

139.    A school risks losing—in part or in whole—substantial federal funding if a violation of Title IX is found.

140.    Upon information and belief, during the period preceding the actions taken against Plaintiff stated herein, there was substantial criticism that Defendants failed to take seriously complaints of female students alleging sexual assault by male students. In fact, the Department of Justice launched an investigation on December 4, 2014, based on multiple complaints about Defendants' handling of reports of students of sexual harassment and sexual assault.

141.    The DOJ released a report of its UNM investigation on or around April 22, 2016, notifying Defendants of several deficiencies in the compliance with federal law, including but not limited to: Defendants' confusing "labyrinth" of outdated and often conflicting policies and procedures as to sexual assault; Defendants' minimal and inconsistent training of University officials, including the Title IX coordinator, who are responsible for addressing and remedying complaints of sexual assault; Defendants' wholly inadequate staffing of UNM's Office of Equal Opportunity (OEO) and training on how to conduct sexual misconduct investigations and adjudications,  which resulted in inconsistent and unreliable determinations of credibility during investigations; Defendants' failure to ensure impartial resolution of Title IX complaints; and Defendants' ineffective evidence gathering, among other deficiencies.

142.    Upon information and belief, at the time of the allegations forming the basis of the Complaint, UNM's OEO had limited staff and high turnover and UNM's OEO investigators only received intermittent, inconsistent, and insufficient training on how to conduct sexual harassment

investigations and adjudications. As such, UNM's OEO investigators were under- and/or improperly trained as well as over-extended.

143.    Upon information and belief, Defendant Frank, Defendant Regents, Defendant Cordova and Defendant Cowan, acting in their individual and official capacities, failed to properly train and supervise its investigators, to include Defendant Vele Buchs, to conduct fair, unbiased and impartial investigation of the allegations levelled against Plaintiff.

144.    Upon information and belief, Defendant Frank, Defendant Regents, Defendant Cordova and Defendant Cowan, acting in their individual and official capacities, failed to properly institute adequate and fair disciplinary procedures to allow for fair, unbiased and impartial investigation of the allegations levelled against Plaintiff.

145.    Upon information and belief, Defendant Frank, Defendant Regents, Defendant Cordova and Defendant Cowan, acting in their individual and official capacities, adopted policies and procedures for Defendant UNM it knew were biased, unfair and violative of Plaintiff's due process rights.

**COUNT I**
**DUE PROCESS VIOLATIONS – ARTICLE II, § 18 OF THE**
**NEW MEXICO CONSTITUTION, FOURTEENTH AMENDMENT OF THE U.S.**
**CONSTITUTION, AND 42 U.S.C. § 1983**

146.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

147.    Article II, Section 18 of the New Mexico Constitution provides, in relevant part, that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"

148.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

24

149.     Plaintiff has a protected right to due process of law in higher education disciplinary proceedings.

150.     Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived by the state without due process.

151.     Plaintiff has a protected property interest in pursuing his education, as well as in his future educational and employment opportunities and occupational liberty, of which he cannot be deprived by the state without due process.

152.     Plaintiff has a protected property interest in continuing his education at the University of New Mexico.

153.     Plaintiff was entitled to process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussions he was facing, especially when the allegations are of sexual misconduct, which will result in a severe sanction that will have lifelong ramifications for Plaintiff.

154.     Plaintiff was expelled from the University of New Mexico and barred from the campus without being afforded basic due process, including, but not limited to, the following:

a.   Meaningful notice of the allegations, to include notice of the severity of the sanction, the alleged violation, and the limitations placed on sexual misconduct findings and hearings;

b.   A meaningful opportunity to be heard, to include the opportunity to respond, explain and defend;

c.   Allowing Plaintiff the opportunity to confront witnesses, to include allowing Plaintiff the opportunity to hear, respond to, and question and cross-examine witnesses, including his accuser;

d.   Identification of all of the evidence and witnesses relied upon by Defendants;

e.   Meaningful and unbiased university policies and procedures;

f.   Affording UNM employees adequate and appropriate training of methods for investigating allegations of sexual misconduct;

g.   A prompt thorough and impartial investigation;

h.   An impartial and unbiased party to determine "Probable Cause;"

i.   An impartial hearing to determine "Probable Cause;"

j.   Following policies and procedures regarding the investigation and sanctioning of students alleged to engage in sexual misconduct;

k.   Allowing Plaintiff's Counsel to represent Plaintiff's interests throughout the investigatory and sanctioning process, to include allowing Plaintiff's counsel to make argument, to examine witnesses, directly or by written questions, to speak on behalf of the Plaintiff, or to take any other action as counsel for Plaintiff; and

l.   Instituting policies and procedures that protect the interests of both the accused student and the accuser.

155.   If Defendants utilized additional procedures, then there would have been a finding by Defendants that the misconduct at issue had not occurred.

156.   Defendant Vele Buchs, with the approval and supervision of Defendants Cowan and Cordova, conducted an investigation that was reckless and grossly negligent.

157.   Defendant Vele Buchs was the sole investigator, fact-finder and decision maker.

158.   Defendants created a policy, pattern and practice which deprived Plaintiff of a fair and impartial investigation, finding of probable cause, an appeal, and further failed to ensure training in the legal and appropriate methods of investigating allegations of sexual misconduct.

159.   Defendants agreed to, approved, and ratified this unconstitutional conduct.

160.   It would have been plainly obvious to a reasonable official that the actions and inactions complained of in this Complaint would deprive or lead to the deprivation of Plaintiff's state and federal constitutional rights.

161.   Defendants had a custom and practice of disregarding and violating students' constitutional rights.

162.   Defendants had a custom and practice of failing to afford basic due process protections to students accused of sexual misconduct.

163.   Defendants' actions and inactions described above were fundamentally unfair to Plaintiff, unduly prone to false findings of sexual misconduct, and were arbitrary and capricious.

164.   Defendants' conduct was so egregious as to shock the conscience.

165.   There is no rational relationship between Plaintiff's actual conduct and the discipline imposed on him by Defendants.

166.   In depriving Plaintiff of his protected due process rights, including his liberty interest in his good name, reputation, honor and integrity, the opportunity to pursue education and employment, and his protected property interest in his graduate education, Defendants violated Plaintiff's right to due process of law in violation of Article II, Section 18 of the New Mexico Constitution and of the Fourteenth Amendment to the United States Constitution.

167.   Defendants have no sufficient justification for abridging Plaintiff's due process rights.

168.   Defendants, acting under color of state law and in concert with one another, by their conduct showed intentional, outrageous and reckless disregard for Plaintiff's constitutional rights.

169.    At all times relevant, Plaintiff had a clearly established right to due process of law which a reasonable public official would have known.

170.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered injury and damages, to include, but not limited to: expulsion from his graduate program at the University of New Mexico; denial of educational opportunities; loss of future educational and employment opportunities; a permanent finding of sexual misconduct on Plaintiff's educational records; damage to Plaintiff's reputation and standing in the community; loss of career opportunities and earnings capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

171.    As a result of the foregoing, Plaintiff is entitled to relief against Defendants as requested in this Complaint.

## COUNT II
## INJUNCTIVE RELIEF

172.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

173.    The allegations of sexual misconduct and Defendants' erroneous finding of probable cause resulted in permanent, life-long sanctions against Plaintiff which are quasi-criminal in nature. Plaintiff's reputation and good name, both personally and professionally, has been tarnished—if not destroyed—due to UNM's biased and inadequate adjudication of the claims against him.

174.    As a result of these significant due process violations, Plaintiff suffered and continues to suffer ongoing harm and irreparable injury and damage to his future educational and employment prospects, and therefore is entitled to injunctive relief, including a reversal of the outcome and findings of the UNM investigation, expungement of Plaintiff's educational records

28

reflecting the improper discipline/sanction and production of verification of such expungement to Plaintiff, prohibiting UNM from disclosing Plaintiff's education records reflecting discipline during the pendency of this action, and readmittance to UNM to complete his graduate program.

175.    As a result of the foregoing, Plaintiff is entitled to injunctive relief against Defendants as requested in this Complaint.

## COUNT III
## REQUEST FOR DECLARATORY RELIEF –
## 28 U.S.C. § 2201 AND NMSA 1978 § 44-6-1 et seq.

176.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

177.    An actual controversy exists between Plaintiff and Defendants regarding Defendants' investigative and sanctioning process of male students accused of sexual misconduct.

178.    Plaintiff seeks a judicial determination pursuant to the New Mexico Declaratory Judgment Act, NMSA 1978 § 44-6-1 et seq. and/or the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the investigative and sanctioning processes utilized by Defendants are unconstitutional, improper, and violative of Plaintiff's rights, and, as such, inadequate and invalid as a matter of law.

179.    A judicial determination resolving this actual controversy is necessary and appropriate at this time.

180.    Due to Defendants' actions and inactions as alleged herein, Plaintiff has suffered, and will continue to suffer, irreparable injury.

181.    Plaintiff does not have an adequate remedy at law.

182.    As a result of the foregoing, Plaintiff is entitled to declaratory relief against Defendants as requested in this Complaint.

**COUNT IV**
**<u>VIOLATION OF TITLE IX — 20 U.S.C. § 1681(a)</u>**

183.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

184.    Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in a school's education program or activity, including all of a school's operations.

185.    Defendant UNM is an educational institution receiving Federal financial assistance under Title IX, 20 U.S.C. § 1681.

186.    Title IX and its regulations require schools, including Defendant UNM, to adopt and publish grievance procedures providing for the prompt and equitable resolution of student complaints that allege any action prohibited by Title IX, including sexual harassment, assault, and misconduct. The procedures adopted by a school must not only ensure the Title IX rights of the complainant, but also accord due process to both parties involved.

187.    Under Title IX, Defendant UNM must also ensure all employees involved in the conduct of procedures have adequate training as to what conduct constitutes sexual harassment and sexual assaults.

188.    Defendant UNM, through its agents, owe a duty to ensure that no student, faculty or staff member, or member of the public is excluded from participation in, denied the benefit of, or is subjected to discrimination under any educational program on the basis of sex.

189.    Defendants failed to provide Plaintiff will the full benefits and services of and excluded him from participation in and discriminated against him with regards to programs, services and/or activities at the University of New Mexico because of his sex.

190.    Defendants deprived Plaintiff, because of his sex, of his rights to due process through the improper and biased administration of university policies, procedures, regulations and

30

guidelines. Defendants applied their policies and procedures and gender-biased practices in a manner that discriminated against Plaintiff on the basis of his sex and led to an erroneous and adverse outcome.

191.    In discriminating against Plaintiff on the basis of sex, Defendants were under scrutiny and federal investigation for the alleged mishandling of sexual assault complaints and were at significant risk of losing federal funding if it didn't "do more" to "crackdown on" allegations of male students engaging in sexual misconduct against female students. Such federal and public pressure and scrutiny improperly motivated and influenced the disciplinary proceeding against Plaintiff due to his sex.

192.    From the start, the "investigation" by Defendants was biased against Plaintiff because of the perceived epidemic of sexual assaults on females by males on college campuses.

193.    Based on Plaintiff's gender, Defendants presumed Plaintiff, a male student accused of sexual misconduct, was guilty and rushed to judgment against him, in spite of the evidence and facts, which led to an erroneous outcome.

194.    Defendants' actions were intentional, and in deliberate indifference to the rights of Plaintiff, the discovery of truth, and the correct outcome of the investigation.

195.    Defendants failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of the allegations against Plaintiff and when its subsequent adjudication was conducted in a manner biased against Plaintiff due to his sex.

196.    Defendants created an environment where an accused male student is fundamentally denied due process by being prosecuted through the investigatory and disciplinary process under a presumption of guilt. Such a one-sided process deprived Plaintiff, as a male student, of educational opportunities on the basis of his sex.

197.    Defendants' response to the allegations against Plaintiff (levying the most severe sanction) were disproportionate and unreasonable in light of the circumstances.

198.    Defendants actively engaged in sex-based discrimination against the Plaintiff by expelling and banning Plaintiff indefinitely from its campus without due process of law.

199.    Defendants failed to provide adequate training for UNM officials, including the Title IX Coordinator.

200.    Defendants failed to adopt procedures that ensure both the Title IX rights of the complainant but also accord due process to both parties involved, including providing adequate, reliable and impartial investigation of complaints.

201.    Defendants failed to provide adequate staffing of UNM's OEO office, failed to ensure that all employees involved in the investigation of alleged sexual misconduct had adequate training as to what conduct constitutes sexual harassment and alleged sexual assaults as required by Title IX, and failed to provide adequate training on how to conduct sexual misconduct investigations and adjudications.

202.    Defendants failed to ensure its OEO investigators were adequately trained in collecting and analyzing evidence in order to make consistent and reliable determinations of credibility during investigations.

203.    Defendants failed to ensure impartial resolution of Title IX complaints.

204.    Defendants treated Plaintiff differently and less favorably on the basis of his sex with regard to the "Probable Cause" finding made by UNM OEO.

205.    Defendants' "Probable Cause" finding was based upon a pre-existing plan to adopt Complainant's allegations on the basis of gender.

206.    Defendants imposed a burden upon Plaintiff to disprove the allegations levelled against him on the basis of his gender.

207.    Defendants intentionally treated Complainant preferentially on the basis of her sex by adopting her statements as true, even though the statements were illogical, inconsistent, or contrary to other witnesses, and ignoring all evidence exculpatory to Plaintiff.

208.    Upon information and belief, Defendants have demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct.

209.    Upon information and belief, Defendants were motivated by gender bias in initiating, adjudicating, and implementing the disciplinary proceeding and sanctions against Plaintiff based upon his sex as a male student accused of sexual misconduct because of the increasing public attention and controversy of sexual assault on campuses and at UNM specifically.

210.    Plaintiff was subjected to a biased, prejudiced, and explicitly unfair process in violation of Title IX.

211.    As a direct and proximate cause of the discriminatory acts of Defendants, Plaintiff has suffered unlawful sex-based discrimination and continuing loss of the benefits of Defendant University of New Mexico's educational programs, loss of career opportunities, economic injuries and other direct and consequential damages.

212.    As a result of the foregoing, Plaintiff is entitled to damages in the amount to be determined at trial, plus pre-judgment interest, attorneys' fees, expenses, and costs.

**COUNT V**
**BREACH OF CONTRACT**

213.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

214.    Defendant UNM, acting through its Board of Regents and employees, created express contracts when Plaintiff accepted an offer of admission at UNM as a graduate student and paid the tuition and fees associated therewith. Plaintiff did so in reliance on the understanding, and with the reasonable expectation, that UNM would fairly and without bias implement and enforce the provisions and polices set forth in its official publications.

215.    Defendant UNM committed several breaches of its express agreements with Plaintiff. A non-exhaustive list of UNM's breaches include the following:

a.      Failing to abide by its policies and procedures;

b.      Failing to conduct a fair and impartial investigation and hearing;

c.      Failing to provide fair and impartial sanctioning process;

d.      Failing to provide adequate due process, to include the right to confront witnesses and one's accuser;

e.      Failing to adequately and properly consider and weigh evidence; and

f.      Failing to allow adequate representation during the investigative and sanctioning processes.

216.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

217.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT VI
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

218.    Plaintiff incorporates herein all allegations contained in the foregoing paragraphs as if set forth in full herein.

219.    Defendant UNM's express contracts with Plaintiff included an implied covenant of good faith and fair dealing which implicitly guaranteed that any investigatory and disciplinary proceedings would be conducted with basic fairness.

220.    Defendant UNM, acting through Defendants, acted in bad faith when it failed to provide adequate due process to safeguard Plaintiff's interests in his education.

221.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

222.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands:

a.  Injunctive relief to redress the injuries proximately and directly caused by Defendants' conduct as stated herein, including the issuance of an order (1) enjoining Defendants from imposing the sanction on Plaintiff; (2) enjoining Defendants from disclosing Plaintiff's education records reflecting discipline during the pendency of this action; (3) requiring Defendants to expunge the improper sanction from Plaintiff's academic records and providing Plaintiff with confirmation of such expungement; (4) and requiring Defendants to allow Plaintiff to complete his doctoral program;

b.  Declaratory relief, including a declaration that the investigative and sanctioning processes used by Defendants are unconstitutional, improper, and violative of Plaintiff's rights;

c.  Damages in an amount to be determined at trial;

d.  Award Plaintiff attorney fees and costs;

e.  Award Plaintiff attorney fees pursuant to 42 U.S.C. §§ 1988 and 1983; and

f.  Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: November 1, 2017

                                            Respectfully submitted:

                                            ADAMS+CROW LAW FIRM

                                            By:  */s/Arlyn G.  Crow*_____
                                            Arlyn G. Crow
                                            Alana M. De Young
                                            5051 Journal Center Blvd. NE, Suite 320
                                            Albuquerque, NM  87109
                                            Phone: (505) 582-2819
                                            Fax:    (505) 212-0439
                                            Arlyn@adamscrow.com
                                            Alana@adamscrow.com
                                            *Attorneys for Plaintiff*

FILED IN MY OFFICE
DISTRICT COURT CLERK
11/1/2017 5:04:55 PM
James A. Noel
Catherine Chavez

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

J. LEE,

       Plaintiff,

v.                                    No.  D-202-CV-2017-07891

THE UNIVERSITY OF NEW MEXICO,
a public university,
THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
individually and in their official capacities,
ROBERT G. FRANK, individually and in
his official capacity, LAURA VELE BUCHS,
individually and in her official capacity,
HEATHER COWAN, individually and in
her official capacity, FRANCIE CORDOVA,
individually and in her official capacity,
MEGAN CHIBANGA, individually and in
her official capacity,

       Defendants.

## COURT-ANNEXED ARBITRATION CERTIFICATION

Plaintiff, by and through his attorneys of record, ADAMS+CROW LAW FIRM (Arlyn G.

Crow and Alana M. De Young), and pursuant to Second Judicial District Court Local Rules, Rule

LR2-603, certifies as follows:

    ___     This party seeks only a money judgment and the amount sought does not exceed
           twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest,
           costs and attorney fees.

    _X_    This party seeks relief other than a money judgment and/or seeks relief in excess of
           twenty-five thousand dollars ($25,000.00) exclusive of punitive damages, interest,
           costs and attorney fees.

Respectfully submitted:

ADAMS+CROW LAW FIRM

By: _/s/Arlyn G. Crow_____
Arlyn G. Crow
Alana M. De Young
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, NM 87109
Phone: (505) 582-2819
Fax: (505) 212-0439
Arlyn@adamscrow.com
Alana@adamscrow.com
*Attorneys for Plaintiff*

2

FILED IN MY OFFICE
DISTRICT COURT CLERK
11/17/2017 4:51:33 PM
James A. Noel
Gena Lopez

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

J. LEE,

        Plaintiff,

v.                                     No. D-202-CV-2017-07891

THE UNIVERSITY OF NEW MEXICO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, ROBERT G. FRANK,
individually and in his official capacity,
LAURA VELE BUCHS, individually and
in her official capacity, HEATHER COWAN,
individually and in her official capacity,
FRANCIE CORDOVA, individually and in
her official capacity, MEGAN CHIBANGA,
individually and in her official capacity,

        Defendants.

## **ENTRY OF APPEARANCE**

        Sheehan & Sheehan, P.A. (Quentin Smith and Leah M. Stevens-Block) hereby enters

its appearance in this matter on behalf of Defendants, The University of New Mexico, The

Board of Regents of the University of New Mexico, Robert G. Frank, Laura Vele Buchs,

Heather Cowan, Francie Cordova, and Megan Chibanga.

///

///

///

///

Ex. A-3

SHEEHAN & SHEEHAN, P.A.
*Attorneys for Defendants*
P.O. Box 271
Albuquerque, NM 87103
(505) 247-0411
qs@SheehanSheehan.com
lsb@SheehanSheehan.com

**Electronically Filed**

/s/ Quentin Smith

By: _____
   Quentin Smith
   Leah M. Stevens-Block

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a true and correct copy of the foregoing Entry of Appearance was served by email on Plaintiff's counsel, Arlyn G. Crow (Arlyn@adamscrow.com) and Alana M. De Young (Alana@adamscrow.com), on this 17th day of November, 2017.

/s/ Quentin Smith

_____
Quentin Smith

S:\17193\PLDG\2nd JD\20171117 EOA (QS).docx

FILED IN MY OFFICE
DISTRICT COURT CLERK
11/17/2017 4:51:33 PM
James A. Noel
Gena Lopez

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

J. LEE,

       Plaintiff,

                                        No. D-202-CV-2017-07891

v.

THE UNIVERSITY OF NEW MEXICO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, ROBERT G. FRANK,
individually and in his official capacity,
LAURA VELE BUCHS, individually and
in her official capacity, HEATHER COWAN,
individually and in her official capacity,
FRANCIE CORDOVA, individually and in
her official capacity, MEGAN CHIBANGA,
individually and in her official capacity,

       Defendants.

## STIPULATION OF ACCEPTANCE OF SERVICE

COME NOW Plaintiff, J. Lee, and Defendants, The University of New Mexico,

The Board of Regents of the University of New Mexico, Robert G. Frank, Laura Vele

Buchs, Heather Cowan, Francie Cordova, and Megan Chibanga, by and through their

respective counsel, and hereby stipulate that undersigned counsel for Defendants has

accepted service of the "Complaint for Injunctive and Declaratory Relief and Damages" on

behalf of the Defendants and further stipulate that the effective date of service is November

17, 2017.

Ex. A-4

ADAMS+CROW LAW FIRM
*Attorneys for Plaintiff*
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, NM 87109
(505) 582-2819
Arlyn@adamscrow.com
Alana@adamscrow.com

SHEEHAN & SHEEHAN, P.A.
*Attorneys for Defendants*
P.O. Box 271
Albuquerque, NM 87103
(505) 247-0411
qs@SheehanSheehan.com
lsb@SheehanSheehan.com

Email Approval – Nov. 17, 2017

/s/ Alana M. De Young

By: _____
        Arlyn G. Crow
        Alana M. De Young

/s/ Quentin Smith

By: _____
        Quentin Smith
        Leah M. Stevens-Block

S:\17193\PLDG\2nd JD\20171117 STIP re Accept Serv (QS).docx

2