## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

J. LEE,

        Plaintiff,

v.                                 No. 1:17-cv-01230-JB-LF

THE UNIVERSITY OF NEW MEXICO,
*et al.,*

        Defendants.

### RESPONSE TO DEFENDANTS' MOTION TO DISMISS DUE PROCESS CLAIMS

COMES NOW, Plaintiff J. Lee, ("Plaintiff") by and through his attorneys, ADAMS+CROW LAW FIRM (Arlyn G. Crow and Alana M. De Young), and hereby submits this Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Due Process Claims ("Response"). Plaintiff respectfully requests this Court deny Defendants' Motion [Doc. 9] and Memorandum Brief [Doc.12] and allow Plaintiff's Due Process claims to proceed because Plaintiff was denied property and liberty interests without adequate Due Process.

### INTRODUCTION

Student disciplinary procedures related to allegations of sexual harassment or discrimination in the college and university context have become a political hot button. *See* https://www.cnn.com/2017/09/22/politics/betsy-devos-title-ix/index.html. No matter where you stand on the political spectrum, concepts of fairness—core concepts in our culture and jurisprudence—require that a person be given adequate due process to protect their property and liberty interests. Fundamental fairness is the bulwark of due process, whether in a courtroom or at a public university. It is in this context that Plaintiff files his Complaint against the Defendants in this case: to protect that core foundational principle of fairness that prohibits a State from using its power to strip a person of his liberty and property interests without adequate due process.

UNM—and the other Defendants—seem to argue in their Motion and Memorandum Brief to Dismiss Plaintiff's Due Process Claims that Plaintiff's Complaint does not articulate a due process claim because the Complaint alleges certain facts that show a minimal amount of "notice" and an "opportunity to be heard" to satisfy the University of New Mexico's ("UNM") due process requirements. Contrary to Defendants' contention, however, receiving limited "notice" and a limited "opportunity to be heard" do not equate to adequate due process. Yet, fundamental fairness requires that a person receive enough notice and enough opportunity to be heard to give them the opportunity to adequately and fairly protect the interest. Here, Plaintiff's Complaint shows that it was fundamentally unfair when Plaintiff, who had a protected liberty and property interest in his education and reputation, did not receive adequate due process protections when the disciplinary procedures, and the acts and conduct of the individual Defendants, expelled Plaintiff based upon allegations of sexual misconduct with nothing more than an "investigation"—if it can even be called that—conducted by Defendants.

While Defendants argue that they provided the minimum level of due process, they focus only upon very limited and specific factual allegations in Plaintiff's Complaint and otherwise ignore the numerous other relevant facts alleged in the Complaint that show that, overall, that the process utilized by Defendants to expel Plaintiff was fundamentally unfair and inadequate. For example, Defendants did not reference the following key facts specifically pled by the Complaint:

a.      Plaintiff applied to, attended, and paid tuition to UNM for four years only to be expelled after having paid tuition, but prior to the start of classes, without receiving a refund for that semester. *See* Complaint dated 11/1/2017 [Doc. 1-1] at ¶¶ 21-28.

b.      Defendant UNM has two different disciplinary procedures: one for sexual misconduct cases and another process for non-sexual misconduct cases. *Id*. at ¶¶ 33-35.

c.      In the non-sexual misconduct cases, an investigator conducts an investigation and provides a summary of the allegations, witnesses and other relevant evidence and allows an accused

student to respond to the charges, present witnesses, and question witnesses at a hearing related to the findings. *Id*. at ¶¶34-35.

        d.      When there are sexual misconduct claims, an investigator conducts an "investigation" and then issues a preliminary "probable cause" or no probable cause" finding based solely upon his or her discretion. This is the first time the accused is given notice of the specific policy violation he allegedly violated. The report does not disclose the names of any witnesses or what information, specifically was reviewed by the investigator. The accused is then required to "respond" to the preliminary report, even though the accused—or their agent—are never present for any portion of the investigation, save for an interview by the investigator, and are never provided the names of any witnesses. The accused is then given only one shot to "find" new evidence against the allegations.[1] If he does not, or the investigator deems the new evidence unpersuasive, the investigator issues a final letter of determination, which becomes binding on the accused. *Id*., at ¶¶ 37-52.

        e.      Unlike non-sexual misconduct cases, the accused in a sexual misconduct case is not provided a hearing during the "probable cause/no probable cause" findings stage. Instead, the investigator makes the probable cause finding, which becomes unrebuttable at a sanctions hearing, and then a hearing is held to determine the severity of the sanction based upon the unrebuttable report provided to the committee or the hearing officer. *Id*. at ¶¶ 37-50.

        f.      Although the initial probable cause finding and sanction *may be* reviewed by the UNM Board of Regents and UNM President, the review is only had in "extraordinary cases." *Id*. at ¶¶ 50-52.

        g.      Critically, the distinction between sexual misconduct and non-sexual misconduct disciplinary actions is that in non-sexual misconduct cases, an accused is provided an investigative report that may be rebutted and the identity of witnesses—and an opportunity to examine witnesses— in front of a committee prior to a violation determination. In sexual misconduct cases, however, the

---

[1] Like criminal charges asserted by the state, the complainant is a witness to the alleged misconduct and is not asserting such claims on her behalf. Thus, UNM's OEO office is the person or entity that asserts the probable cause/no probable cause finding, not the complainant.

investigator becomes the investigator, judge and jury, and never provides the accused an adequate opportunity to challenge the investigator's findings. *Id.*, at ¶¶ 37-52.

h.      Specifically, Defendant Vele Buchs, the investigator, was accusatory and hostile to Plaintiff from the start, Plaintiff was never provided with an actual witness statement, no witness was recorded, no witness asked to sign or review a statement, no questions were presented to the witness in writing, inconsistencies in witness statements were never followed up, and the witness interviews were not complete or thorough. Plaintiff identified a number of inconsistencies in the allegations raised in the investigator's report, but Plaintiff was never given an opportunity to adequately challenge the credibility or veracity of the statements (at a hearing or otherwise). Worse, Defendants never advised Plaintiff that UNM, through its Office of Equal Opportunity ("UNM OEO"), was going to conduct an investigation, that the investigator's findings would be final, that Plaintiff could not challenge the findings at a hearing, and that Plaintiff could be sanctioned, up to and including expulsion, if the investigator found "probable cause" of sexual misconduct. *Id.*, at ¶¶69-71;73; 75; 78; 92-99; 115-117.

i.      Plaintiff was found by UNM OEO to have violated University Policies and Plaintiff was required to attend a sanctions hearing. Plaintiff was advised that the only issues that would be resolved by both the investigation and the disciplinary hearing were the sexual misconduct allegations, Defendant Chibanga, without any notice to Plaintiff, asked Plaintiff questions regarding underaged drinking and alcohol, contrary to the policies and guidelines established by UNM. Defendant Chibanga expelled Plaintiff, based in part upon the alleged underage drinking and alcohol, even though Plaintiff never had notice of such charges, and even though he was advised that those issues would not be part of the sexual assault claims. *Id.*, at ¶¶ 117; 119-122.

j.      Not surprisingly, in April of 2016 the US DOJ found that UNM's student discipline guidelines were deficient because of Defendant's confusing labyrinth of outdated and often conflicting policies and procedures as to sexual assault. The DOJ further found that Defendant's minimal and inconsistent training of officials who are responsible for addressing complaints of sexual assault, and

further that Defendant UNM failed to provide adequate staffing and training to UNM officials; instead, the OEO investigators were improperly trained and not able to adequately conduct investigations, to gather evidence, or to determine the credibility of the witnesses, even though the investigators were charged with just that: making credibility determinations *Id.*, at ¶¶ 140-145.

Contrary to Defendants' Motion, these actions show that Plaintiff was not afforded adequate Due Process as Defendants failed to provide Plaintiff: meaningful notice of the allegations, to include notice of the severity of the sanction, the alleged violation, and the limitations placed on sexual misconduct findings and hearings; meaningful opportunity to be heard, to include the opportunity to respond, explain and defend; the opportunity to confront witnesses and the opportunity to hear, respond to, and question and cross-examine witnesses, including his accuser; identification of all of the evidence and witnesses relied upon by Defendants; meaningful and unbiased university policies and procedures; a prompt thorough and impartial investigation; an impartial and unbiased party to determine "Probable Cause"; and an impartial hearing to determine "Probable Cause." Defendants further failed to provide adequate due process when they failed to follow policies and procedures regarding the investigation and sanctioning of students alleged to engage in sexual misconduct; refused to allow Plaintiff's Counsel to represent Plaintiff's interests throughout the investigatory and sanctioning process, to include allowing Plaintiff's counsel to make argument, to examine witnesses, directly or by written questions, to speak on behalf of the Plaintiff, or to take any other action as counsel for Plaintiff; and failing to institute policies and procedures that protect the interests of both the accused student and the accuser. *See generally* Complaint [Doc. 1-1].

Further, Defendants mistakenly claim that Plaintiff only seeks to expunge his record and readmittance. To the contrary, the Complaint also requests a reversal of outcome and findings of the UNM investigation, a finding that the sanctioning process utilized by Defendants are improper and violative of the law. *See* Complaint [Doc. 1-1] at p. 35-36 (prayer for relief); ¶¶ 174 & 178.

When all of the factual allegations stated in Plaintiff's Complaint are viewed as a whole against the backdrop of Tenth Circuit case law and precedent, Defendants claim that Plaintiff has not identified a due process claim against the individual Defendants loses weight and credibility. For these reasons, Defendants' Motion to Dismiss Plaintiff's Due Process Claims fails and should be denied by this Court.

## STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's due process claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 12] at p. 2. When considering a 12(b)(6) motion, this court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006)). Although Plaintiff's Complaint was originally brought in state court and subject to New Mexico's notice pleading standard, Defendants voluntarily removed the case to federal court on December 12/14/2017. [Doc. 1]. With the case proceeding in federal court, the applicable *Twombly* standard requires this Court to consider "whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955). In this case, Plaintiff has met Rule 12 and plead sufficient facts to support his Due Process Claims against the individual Defendants.

## ARGUMENT

## I.   PLAINTIFF HAS PLEAD SUFFICIENT FACTS TO STATE A DUE PROCESS CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

In order to assert a Constitutional claim under 42 U.S.C. § 1983,

[a] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

*Ysasi v. Brown*, 3 F.Supp.3d 1088, 1115-16 (D.N.M. 2014) (citation omitted). Plaintiff's Complaint alleges the Defendants, in their official and individual capacities, while acting under color of state law,

violated Plaintiff's state[2] and federal constitutional due process rights when they expelled him from UNM without adequate due process. As articulated more fully below, these allegations in the Complaint support a Constitutional Due Process claim under section 1983.

In their Motion and Memorandum Brief, Defendants appear to argue that Plaintiff fails to plead a due process claim for the following reasons: (1) University of New Mexico, and its Board of Regents, are an arm of the State of New Mexico and are, therefore, not "persons" under § 1983; (2) that Plaintiff's claims for injunctive and declaratory relief fail because Plaintiff allegedly failed to identify a person against whom they may seek such relief; (3) that Plaintiff fails to assert a due process claim against the UNM Defendants; and (4) that UNM employees, while acting in their individual and official capacity, are afforded immunity under the "qualified immunity doctrine." Defendants' arguments fail, however, because the facts, as plead, articulate a claim for relief against all of the Defendants. [3]

A. **Defendants Cannot Claim Eleventh Amendment Immunity When Plaintiff Claims Equitable Relief.**

Plaintiff seeks prospective equitable relief from the Court demanding the Defendants to reverse the UNM sanction and investigation outcome and findings against the Plaintiff, expunge Plaintiff's educational records, prohibit UNM from disclosing Plaintiff's educational records reflecting the UNM sanction against the Plaintiff, and readmit Plaintiff into UNM to complete his graduate program. *See*

---

[2] Defendants claim Plaintiff has failed to state a constitutional claim because the Complaint does not state a federal constitutional claim. As this Response Brief identifies, Plaintiff has adequately plead a federal constitutional claim, and, therefore, Plaintiff has adequately plead a state constitutional claim.

[3] Defendant UNM has not alleged in their Motion that it—and its Board of Regents—cannot be sued because of Eleventh Amendment immunity. *See Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002). As discussed herein, Defendant UNM waived any claims to Eleventh Amendment Immunity from suit when it removed the case to federal court. *See* Response at pp. 9-10. Notwithstanding that fact, it is quite evident that the Tenth Circuit does not abandon the state's liability immunity for monetary damages when a case is removed from state to federal court. *See Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014). Plaintiff, however, will not argue that UNM—as a state entity—or the Individual Defendants acting in their official capacities are subject to money damages. This, however, does not mean that Plaintiff waives any right to costs and attorneys' fees should Plaintiff prevail on his claims against the UNM Defendants for injunctive relief or claims brought against the Defendants in their individual capacity under § 1983. *See Maine v. Thiboutout*, 448 U.S. 1, 9 (1980) (42 U.S.C. § 1988 "states that fees are available in *any* §1983 action. Since we hold that this statutory action is properly brought under §1983, and since §1988 makes no exception for statuary §1983 action, § 1988 [permitting the prevailing party to recover reasonable attorney's fees] plainly applies to this suit.").

*generally* [Doc. 1-1], at prayer for relief, pp. 35-36. Ancillary to the equitable relief requested, Plaintiff also seeks a declaration from this Court that the investigative and sanctioning process utilized by the Defendants was unconstitutional, violated Plaintiff's rights, and is therefore inadequate as a matter of law. *Id*. For purposes of seeking prospective equitable relief, Defendants, acting in their official capacities, can be sued in federal court. It does not matter that they are succeeded by another official because that successor official automatically assumes the defendant's position in the lawsuit. The Defendants, acting in their official capacities, have been properly named and either waived their right to argue that the State is immune from suit or they fall under the *Ex Parte Young* immunity exception.

### 1.   Defendants Cannot Assert an Immunity Defense.

Defendants are correct that Plaintiff may seek prospective injunctive relief from this Court against the Individual Defendants in their official capacities. [Doc. 12], at p. 29. This is because Defendants voluntarily removed this case to federal court. [Doc. 1], Notice of Removal. Once Defendants removed the case, they unequivocally waived their Eleventh Amendment immunity from suit in federal court. *See Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200, 1205-06 (10th Cir. 2002). Although the State retains immunity from monetary damages when a case is removed, it does not retain its immunity from suit for prospective injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Estes,* 302 F.3d at 1206 ("Because [the State as a Defendant] waived its sovereign immunity by removing the case from state court to federal court, [this Court] need not address whether injunctive relief is available for [the Plaintiff] under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)"); *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014) (recognizing a "state may waive immunity from suit while retaining immunity from liability for monetary damages").  This is especially true when the state, through its own laws, waives its sovereign immunity from suit. *See Estes,* 302 F.3d at 1206 (recognizing that once a case is voluntarily removed by defendants to federal court, it waives any immunity as to claims that could be brought in state court); NMSA 1978, § 41-4-

17 (2018) (stating that the New Mexico Tort Claims Act does not prohibit proceedings against the State for injunctive relief).  Defendants waived their immunity defense in this case.

### 2.   Plaintiff's Equitable Relief Claim Falls Under the Ex Parte Young Exception.

Notwithstanding the fact that Defendants, in their official capacity, waived Eleventh Amendment immunity by choosing to remove this action from state to federal court, the *Ex Parte Young* exception would apply in this situation, allowing Plaintiff to seek prospective relief from the individual defendants acting in their official capacity. *See Buchwald v. University of New Mexico School of Medicine¸*159 F.3d 487, 495-96 (10th Cir. 1998) ("*Ex Parte Young* recognizes an exception to Eleventh Amendment immunity under which a state officer may be enjoined from 'taking any steps toward the enforcement of an unconstitutional enactment, to the injury of complainant.'") (citation omitted). Based on UNM's waiver of Eleventh Amendment immunity and the *Ex Parte Young* exception, an expelled UNM student such as Plaintiff may seek prospective relief against UNM to protect against continuing constitutional violations.

### 3.   Further, Defendants Have Been Properly Named.

The Defendants next argue that none of the named Individual Defendants identified by Plaintiff have the authority to grant the relief sought. [Doc. 12] at pp. 28-29.  Implicit in Plaintiff's request for relief for expungement, however, is that Defendants have the authority to provide such relief. Plaintiff identified both the Board of Regents and the UNM President (Robert Frank) individually and in their official capacity. [Doc. 1-1]. The Complaint states that the Board of Regents has the power to promulgate rules and regulations related to the governance of UNM and has general supervisorial control of UNM and the actions of UNM's employees. *Id.* at ¶¶ 8-9. Similarly, The Board of Regents hires a president to act as UNM's Chief Executive Officer. Thus, both the UNM Board of Regents and the UNM President could affect the prospective relief requested by Plaintiff.

Defendants, who are in the best position to know the person authorized to expunge records and reinstate students, do not deny that the current President of UNM has authority to expunge records. In

a footnote, however, Defendants note that former President Robert Frank had the apparent authority to reinstate Plaintiff, but claim Mr. Frank is no longer President of UNM, and any former power he may have had to reinstate now does not exist. [Doc. 1-1] at n. 8. Defendants disregard the fact that "when officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25 ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party"). Because Defendants Robert Frank and the Board of Regents are sued in their official capacity for injunctive relief, their successor in office is automatically substituted as a party. Moreover, by the transitive property, the Board of Regents should hold the same authority and powers as the president to perform—or direct others to perform—the prospective relief requested in Plaintiff's Complaint. Based upon Defendants' own admission, the UNM President, and by logical extension the UNM Board, have the power to fulfill the prospective relief requested in Plaintiff's Complaint. Therefore, Plaintiff's claim for injunctive relief should survive.

Should this Court find it necessary for Plaintiff to specifically plead that a particular Defendant has the authority to expunge records and reinstate Plaintiff, Plaintiff respectfully requests this court allow Plaintiff the opportunity to amend the Complaint prior to dismissal because this case is in its early stages of litigation and Defendants will suffer no unfair prejudice.[4] Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

**B. Plaintiff Has Adequately Plead a Due Process Claim to Support a §1983 Claim.**

Notwithstanding the fact that Defendants, acting in their official capacity, can be sued for prospective injunctive relief, Defendants further argue that Plaintiff has failed to plead a violation of a constitutional right to support a Section 1983 claim. (Doc. 12 at 29). Contrary to Defendants' position,

---

[4] UNM, its Board of Regents and other UNM officials have been sued in their official capacities, thus the state entity is already on notice of Plaintiff's claims.

however, Plaintiff has adequately plead a violation of the Due Process Clause of the Fourteenth Amendment in his Complaint to support a section 1983 claim.

"The [Due Process] Clause [of the Fourteenth Amendment] is phrased as a limitation on the State's power to act…It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law.'" *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195 (1989); *Kirkland v. St. Vrain Valley Sch. Dist. No. Re–1J,* 464 F.3d 1182, 1189 (10th Cir.2006) ("Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision."). When determining whether due process has been satisfied, courts consider: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Kirkland*, 464 F.3d at 1189. Plaintiff in this case possessed a liberty and property interest and was not afforded adequate due process by UNM and the individual Defendants when he was expelled. For these reasons, the UNM Defendants' arguments that Plaintiff has failed to plead a Section 1983 claim for violations of his due process rights must fail.

### 1. Plaintiff Has a Protected Property Interest in His Continued Enrollment.

"[T]he Tenth Circuit recognizes a constitutional right to due process before a student can be deprived of her property interest in h[is] continued enrollment and graduate education." *Lee v. Kansas State University*, 2013 WL 2476702 at *6 (D. Kan., June 7, 2013) (unpublished) (reviewing 10th Circuit cases); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) (finding Plaintiff "had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution."); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986); *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir.1975) (finding a student in a public vocational-technical school's nursing program had a protected property interest); *Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014) (collecting cases); *Siblerud v. Colorado State Bd. of Agric.*, 896 F. Supp. 1506, 1512–13 (D. Colo. 1995) (relying on *Gossett* to find a graduate student

11

had a property interest in attending Colorado State University); *see also Assenov v. University of Utah,* 553 F.Supp.2d 1319, 1327 (D. Utah 2008) (finding property right in student's continued enrollment in the doctoral program of the University of Utah College of Engineering's Nuclear Engineering Program). The Supreme Court, in the seminal case of *Goss v. Lopez,* 419 U.S. 565 (1975), stated that a property interest is created "by an independent source, such as state statutes or rules." *Id.*at 572-73. Following the logic of *Goss,* the Tenth Circuit recognized that a state resident's entitlement to post-secondary public education through the legislature creates a property right. *See Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986). "The actual payment of tuition secures an individual's claim of entitlement." *Id.* at 423 (citing *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975)).

New Mexico's Legislature established the University of New Mexico to provide all of its citizens with post-secondary education. *See* NMSA 1978, § 21-7-1, *et seq*. Plaintiff in this case has a property interest in his continued education at the University of New Mexico's Doctoral Program. Plaintiff was enrolled at the University of New Mexico and had paid his tuition for over four years. [Doc. 1-1] at ¶ 26. In fact, Plaintiff paid tuition for the fall semester of 2016, but was expelled from UNM prior to that date and barred from attending any classes for which he already paid. *Id.* at ¶ 28. Plaintiff has a property interest in his continued education in a post-graduate education, "and more prominently so" because he had paid a separate fee for enrollment and attendance at the University. *Gaspar*, 513 F.2d at 850; *see also Harris*, 798 F.2d at 424 (recognizing that a person has a property interest in his post-graduate education). The Complaint articulates a valid property interest.

**2.   Plaintiff Has a Protected Liberty Interest in His Good Name and Reputation.**

Not only does the Fourteenth Amendment protect a student's property interest in continuing education, but "[t]he Due Process Clause also forbids arbitrary deprivations of liberty." *Goss*, 419 U.S. at 574. "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." *Id.* (Citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  In the instant case, Plaintiff plead in his

12

Complaint that his reputation has been harmed because his educational, which was impeccable, now shows an expulsion for alleged sexual misconduct. [Doc. 1-1] at ¶¶ 129-133; 149-171; 173-174.

As recognized by the Court in *Goss*, any notations on educational records identifying misconduct or expulsion clearly deprive a student of liberty interests protected by the Fourteenth Amendment of the U.S. Constitution. 419 U.S. at 574-55 (recognizing that a suspension could "seriously damage the students' standing with their fellow pupils and their teachers as well as with later opportunities for higher education and employment"); *see also Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 613-14 (E.D. Va. 2016) (because plaintiff's expulsion for sexual misconduct was indisputably a state action, the record makes clear that state action has deprived plaintiff of a protected liberty interest). Thus, the Complaint alleges a recognized liberty interest.

## C.   Plaintiff Was Not Afforded Procedural Due Process Prior to his Expulsion.

Analysis of the adequacy of process under the Due Process Clause in suspension or expulsion cases is governed by the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Watson ex rel. v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001).  "Under *Mathews*, a court must balance three factors: (1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail."  *Id*. Here, the facts plead in the Complaint establish that the *Mathews* factors weigh in favor of affording Plaintiff more process than that afforded him by Defendant.

### 1.   Private interests are affected.

Plaintiff agrees with Defendants that his interest in continued enrollment at UNM was "substantial." *See* [Doc. 12] at 16. Indeed, in a case where a graduate student faces expulsion in a disciplinary proceeding, the students private interest is exceptionally robust. *See Siblerud v. Colorado State Bd. of Agriculture*, 896 F. Supp. 1506, 1516 (D. Colo. 1995).  Plaintiff in this case was a graduate student at UNM who had completed his coursework with distinction. Plaintiff paid tuition for over four

years and needed only to complete his dissertation before graduating.  Given the fact that UNM has expelled and barred the Plaintiff, he has no chance of obtaining his Ph.D. degree from UNM.

Similarly, the quasi-criminal nature of the expulsion has lifelong ramifications that will affect everything from future education to job prospects, to include the ability to further his education in his field of interest—or any other academic field. Moreover, Plaintiff's transcript reflects a notation of expulsion. Because the transcripts would need to be provided to any other educational institution if he wants to continue his education somewhere else *or* if such transcripts are requested from any prospective employer, such notation will hurt any chances at education or employment. *See Doe v. Rector & Visitors of George Mason Univ.,* 149 F.Supp.3d at 613-14 ("a non-academic justification for an expulsion implies the existence of serious character defects").

### 2.   Risk of erroneous deprivation and value of additional safeguards.

As the Supreme Court in *Goss* recognized, "[d]isciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial." 419 U.S. at 580. Thus, where an accused faces the possibility of expulsion from a graduate program, the accused should be entitled to a meaningful hearing. *See Allahverdi v. Regents of Univ. of New Mexico*, No. 05-277 JB/DJS, 2006 WL 1313807, at *9 (D.N.M. Apr. 25, 2006)(A public educational institution may not expel a student for misconduct "without adherence to the minimum procedures required by [the Due Process] Clause."); *Siblerud*, 896 F. Supp. at 1516. A meaningful hearing, in the context of a claim of sexual assault, should be procedurally more stringent than your standard expulsion case because of the stigma associated with being characterized as a "sexual predator."  As the court *George Mason Univ.* explained, "common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma than an adjudication of the run-of-the-mill assault or vandalism."  149 F. Supp. 3d 602.

**i.      Inadequate Opportunity to be Heard and Respond.**

In order to mitigate the possibility of error in a disciplinary determination, courts have required that a person accused of sexual misconduct should have an opportunity to present evidence, and confront witnesses, in front of an impartial tribunal. *See Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 520-21 (10th Cir. 1998) (providing a professor accused of sexual misconduct with identity of adverse witnesses, a trial-like evidentiary hearing, and an opportunity to cross-examine witnesses); *Doe v. Alger*, 175 F. Supp. 3d 646 (W.D. Va. 2016); *George Mason Univ*., 149 F. Supp. 3d 602.  This is especially true when the fact issues associated with whether a party consented to sexual contact turn on very complex and complicated fact issues, to include issues of credibility, that may turn on presentation of evidence and examination of witnesses. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (recognizing the importance of oral presentations, "particularly where credibility and veracity are at issue"); *Neal v. Colorado State Univ.-Pueblo*, No. 16-CV-873-RM-CBS, 2017 WL 633045, at *23 (D. Colo. Feb. 16, 2017)(recognizing that the probable values of allowing the accused an opportunity to cross-examine witnesses and present evidence to an impartial decision maker "are each high" and would "make an erroneous decision less likely"); *Siblerud*, 886 F. Supp. at 1516 (recognizing that a pre-termination hearing would not be too cumbersome and would have "provided more safeguards against any erroneous decision"); *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972) (where a student disciplinary proceeding hinges on a problem of credibility where the decision maker has to choose to believe either the accused or the accuser, cross-examination of witnesses might be essential to a fair hearing); *Donohue v. Baker*, 976 F. Supp. 136, 146-47 (N.D.N.Y. 1997) ("[I]n light of the disputed nature of the facts and the importance of witness credibility … in this case, due process required that the panel permit the [accused student] to hear all evidence against him and to direct questions to his accuser through the panel"); *Doe v. Regents of the Univ. of Cal. San Diego*, No. 37-2015-00010549-CU-WM-CTL, Minute Order, at 2 (Mar. 25, 2015) (Finding "[t]he right of cross-examination is especially important where finding against a party are based on an adverse witness's

testimony[]" and that such was "essential" in case where report introduced in disciplinary proceeding against student made findings regarding the credibility of the complainant.)(cited authority omitted); *Doe v. Univ. of Cincinnati*, No. 1:16CV987, 2016 WL 6996194 (S.D. Ohio Nov. 30, 2016)( (finding "cross-examination was essential to due process" in investigation of sexual assault claims where the determining committee "was given the choice of believing either Jane Roe or Plaintiff[.]").

In this case, Plaintiff contested the factual assertions made by the Complainant, to include contesting the claims that the accusing student was unable to consent to sexual contact due to incapacitation. [Doc. 1-1] at ¶¶ 62; 74; 106. Plaintiff was not given a fair opportunity to adequately challenge the claims against him or to challenge the credibility of the Complainant or any witnesses. Instead, the Investigator, who was hostile toward Plaintiff and evidenced bias, interviewed witnesses outside the presence of Plaintiff, made credibility determinations regarding the witnesses, and made a "probable cause" determination without ever holding a formal hearing whereby Plaintiff had any opportunity to challenge these assertions. *Id*. at ¶¶ 62-100 (describing "investigation" conducted). In essence, the OEO investigators acts as investigator, judge and jury without a fair and unbiased process.

UNM's process does not contain many of the characteristics that an open, unbiased and fair process should contain to afford due process.  Plaintiff is never given an opportunity to know who the witnesses are that provided information to UNM OEO, not allowed to be present during any of the interviews/investigations conducted by UNM OEO, is never provided any taped interviews of these witnesses interviewed by UNM OEO, never provided an opportunity to question the witnesses regarding the factual assertions made in the PLD or FLD, never provided an opportunity to examine witnesses in front of an impartial panel, and never provided an opportunity to adequately prepare for the allegations raised in either the FLD or PLD.  Plaintiff is only allowed to provide a statement to UNM OEO- and other factual information not already "discovered"—even though Plaintiff cannot know what has, or has not, been discovered because he was never involved in the investigation. The

16

entire process is unfair and partial against Plaintiff and does not give Plaintiff an opportunity to adequately challenge the claims asserted against him.

The cases cited to support their claim that Defendants met the "minimum" due process requirements of this Court do not actually support that proposition. One case cited by Defendants, *Doe v. Cummins*, instructs that an investigator must not be biased and explains that should there be evidence of such bias, such may indicate a due process violation.  662 F. App'x 437, 449-450 (6th Cir. 2016). In discussing the issue, *Cummins* court determined that having a separate panel, outside of the investigatory process, prevents the possibility of such bias. *Id*. at 450. In this case, having an investigator who is accusatory of Plaintiff from the get-go and who refuses to analyze contradictory evidence is indicia of bias and can easily be remedied by instituting a procedure similar to those applied by UNM in non-sexual misconduct cases, *i.e*., an actual hearing.

Defendants also cite *Flaim v. Med. Coll. Of Ohio*, 41 F.3d 629, 635 (6th Cir. 2005), to argue that Plaintiff's allegations in the Complaint that he should be entitled to more process than offered by UNM and the individual defendants was not warranted.  Again contrary to Defendants' assertions, the court in *Flaim* recognized that an expulsion requires the court to make a "more searching inquiry" into the due process analysis.  *Id.* at 634. As the court in *Flaim* instructed,

> Notice and an opportunity to be heard remain the most basic requirements of due process. Within this framework—and the generalized, though unhelpful observation that disciplinary hearings against students and faculty are not criminal trials, and therefore need not take on many of those formalities—the additional procedures required will vary based on the circumstances and the three prongs of *Mathews*. Beginning with notice, in *Goss* oral notice sufficed. The stronger the private interest, however, the more likely a formal written notice—informing the accused of the charge, the policies or regulations the accused is charged with violating, and a list of possible penalties—is constitutionally required. In some circumstances where factual issues are disputed, notice might also be required to include the names of witnesses and a list of other evidence the school intends to present.
>
> ****
> An accused individual has the right to respond and defend, which will generally include the opportunity to make a statement and present evidence. It may also include the right to call exculpatory witnesses. Some circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases.

*Id.* at 635-36. (citations omitted).  As the *Flaim* court instructs, the question is one of fairness and requires the court to look at the totality of the process to determine whether the process was fair and whether adequate process was afforded. *Id.* at 634; *Doe v. Cummins*, 662 F. App'x at 446 ("In the school disciplinary context, an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker."). moreover, the reasoning in *Flaim* supports the holding in *Goss* and cases in the Tenth Circuit: a public educational institution may not expel a student for misconduct "without adherence to the minimum procedures required by [the Due Process] Clause." *Goss v. Lopez*, 419 U.S. 465, 573-74 (1975); *Watson ex rel. v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). Defendants also cite to *Watson ex rel. v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001) for the proposition that the Tenth Circuit does not allow for cross-examination. However, in *Watson*, the Court found the accused in that case was not prejudiced by the outcome because additional procedures would not have protected the accused who "candidly admitted his guilt." *Watson ex rel. v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001). *Watson* does not announce a rule, as Defendants seem to suggest, that accused are never entitled to cross-examination.

## ii.    Inadequate Notice.

Not only was Plaintiff denied adequate due process because he was not given an opportunity to present his case at a hearing, but Plaintiff was also denied adequate notice. As a general mater, a student threatened with expulsion is entitled to notice that "contains a statement of the specific charges and grounds which, if proven, would justify expulsion*." See Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961); *Goss v. Lopez*, 419 U.S. at 581; 584 (finding that "[d]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story[;]" however, for "[l]onger suspensions or expulsions for the

remainder of the school term, or permanently, may require more formal procedures.")); *Doe v. Alger*, 175 F. Supp. 3d 646, 661 (W.D. Va. 2016) ("The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University].").

Plaintiff in this case never received adequate, meaningful notice of the allegations or the alleged violation of policy, the severity of the sanction he faced, the policies or procedures that would be followed, or any limitations placed on sexual misconduct findings and hearings. [Doc. 1-1] at ¶¶ 70-71; 116;154(a). At no time was Plaintiff advised that he faced possible expulsion if UNM OEO unilaterally determines that "probable cause" of a UNM policy violation is found by the UNM OEO investigator; that he was in violation of specific policies of the UNM disciplinary guidelines; that the UNM OEO officer would rely upon hearsay statements from witnesses without any indicia of trustworthiness; that Plaintiff would not have an opportunity to address any allegations raised by the Complainant at a hearing, formal or otherwise; that Plaintiff would not have an opportunity to examine or cross-examine witnesses or the complainant; that once the OEO Officer finds "probable cause," the only recourse for the Plaintiff is to request an appeal from the UNM Board of Regents and the President of UNM; or that any "probable cause" finding by the OEO is final and would not be challenged at any sanctions hearing. When Plaintiff received this letter, he simply did not understand—or know—that the investigation was both an investigation and a determination of "guilt"; that is, he did not know that the investigator was really wearing three hats: investigator, judge and jury.

Plaintiff eventually received a Preliminary Letter or Determination that identified the policy violations of which he was charged.  By that time, however, the UNM OEO had already made its decision as to the probable cause finding and only allowed Plaintiff to submit "facts not yet discovered by the investigation."  [Doc. 1-1] at ¶100. Of course, Plaintiff was not wholly certain what, specifically, was or was not discovered by the investigation because the investigation was conducted by the UNM OEO investigator and without the Plaintiff or counsel present and without disclosing any witnesses.

Thus, Plaintiff could not determine whether there were any "new facts" that could be gleaned from the witnesses because the witnesses were not disclosed to Plaintiff, and the PLD stated that Plaintiff had only two weeks to respond with any new "facts", even though the UNM OEO had months to conduct an investigation and prepare their investigative report. *Id.* at ¶¶ 101-102. "Notice must be sufficient to allow an accused student a meaningful opportunity to prepare." *George Mason Univ.*, 149 F. Supp. 2d at 618. Notwithstanding the fact that University Defendants did not provide a hearing on the issue of fault, Plaintiff was also not afforded adequate notice regarding the witnesses and where certain information was obtained to allow Plaintiff to find "newly discovered" information to rebut the factual determinations presented by UNM OEO.

Similarly, when Plaintiff received notice of the sanctions hearing, he was never advised that allegations of underage drinking would be part of the calculus in their sanction. Indeed, underaged drinking was not even listed as a violation of policy in either the PLD or the FLD. [Doc. 1-1] at ¶¶119-122. Not only did the Student Conduct Officer fail to provide notice of this charge, but she determined that such conduct formed part of the basis for the expulsion of Plaintiff. Id., at ¶123. Such failure is a clear violation of Plaintiff's Due Process rights and his rights under the Student Grievance Procedure.[5]

Defendants again cite to *Flaim v. Med. Coll. Of Ohio*, 41 F.3d 629, 635 (6th Cir. 2005) to argue that adequate notice was provided. However, *Flaim* does not support Defendants' position. Plaintiff has plead that Defendants ignored even the minimum requirements of due process by failing to provide Plaintiff with notice of the charges against him, to include notice of the charge, "the policies or regulations the accused is charged with violating, and a list of possible penalties, all of which are constitutionally required. *Flaim*, 418 F.3d at 635. Under *Flaim*, Plaintiff was not provided adequate due process.

---

[5] Equally, the UNM Student Handbook is confusing and does not adequately identify which procedure, if any, will be applied to claims of sexual misconduct. Thus, Plaintiff does not have an ability to obtain "notice" of the procedures and sanction imposed under the UNM Student Handbook.

### 3. Government's Interests.

Given the liberty and property interests at stake, Defendant UNM cannot identify a legitimate government interest in not allowing a more formal procedure, especially when the Defendant *does* allow a more formal due process hearing in cases where no allegations of sexual mistreatment are alleged. Consideration of the "fiscal and administrative" burdens associated with greater procedural protections does not tilt the scales in UNM's favor. The alleged "hearings" for students accused of sexual misconduct were simply an initial investigation followed by a hearing solely to address the sanctions to be imposed. At the sanctions hearing, Plaintiff could not challenge the probable cause determination that a violation of student sexual misconduct policy occurred. In contrast, student grievance procedures in misconduct cases not involving sexual misconduct afford the accused the right to a hearing addressing whether a violation in fact occurred. [Doc. 1-1] at ¶¶ 33- 35. This unjustified, disparate treatment of the accused is not fairness and only supports a finding that additional procedural protections in sexual misconduct claims, similar to those it already employs in other disciplinary matters, would not burden UNM.

Thus, Plaintiff has pled sufficient facts to support a due process claim which, in turn, supports his claim under Section 1983.

### D. Defendants' Qualified Immunity Claim Must Fail as a Matter of Law.

Defendants argue that the Individual Defendants are immune from suit under the Qualified Immunity Doctrine. [Doc. 12] at pp. 8-25. To overcome the Individual Defendants' claim for qualified immunity, Plaintiff must show: "first, that the defendant's actions violated a constitutional or statutory right and, second, that the right at issue was clearly established at the time of the defendant's allegedly unlawful conduct." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007).

### 1. Plaintiff Held A Clearly Established Right.

"A court should inquire 'whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts.'"

*Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1300–01 (D.N.M. 2015) (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir.2004)). This Court has previously recognized that "[g]eneral statements of the law are not inherently incapable of giving fair and clear warning...." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1300–01 (D.N.M. 2015) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

As described more fully above, Plaintiff's property and liberty rights were clearly established prior to his deprivation without adequate process; accordingly, Defendants' qualified immunity defense for claims against Defendants in their individual capacities should fail as a matter of law. In this case, a "right in question is the constitutional right to due process before a student can be deprived of her property interest in her continued graduate education." *Lee v. Kansas State Univ., No. 12-CV-2638-JAR-DJW*, 2013 WL 2476702, at *7 (D. Kan. June 7, 2013). Tenth Circuit precedent cited by Plaintiff, *supra*, supports the conclusion in *Lee v. Kansas State Univ.* that "this right is clearly established, and a reasonable official would have known that the conduct alleged by Plaintiff was unconstitutional." *Id.* Notwithstanding the fact that the Tenth Circuit has clearly identified case law regarding property interests for cases involving student discipline,[6] Defendants cite cases outside the Tenth Circuit to argue support for their position that enrollment in post-secondary education is not a protected interest. These cases do not support the Defendants position because there are clearly identified cases in the Tenth Circuit indicating that a public university student has both protected liberty and property interests at UNM.

## 2.  The Individual Defendants' Conduct Violated Plaintiff's Clearly Established Right.

Defendants seek to argue that UNM provided sufficient procedure to Plaintiff prior to expelling him from the university for alleged sexual misconduct. Plaintiff, however, has articulated why the due

---

[6] As this court has recognized, academic decisions versus disciplinary decisions in the school context are different. The accused are entitled to greater due process protections for disciplinary actions by a post-secondary educational institution. *See Allahverdi*, 2006 WL 1313807, at *10-11 (D.N.M. Apr. 25, 2006)

process provided Plaintiff was inadequate and have identified specific factual allegations supporting

why the actions and conduct of the Defendants specifically identified in the complaint support a due

process claim against the Defendants.

Specifically, Plaintiff's Complaint alleges facts that support Plaintiff's general allegations that

Defendants failed to provide meaningful notice of the allegations, to include notice of the severity of

the sanction, the alleged violation, and the limitations placed on sexual misconduct findings and

hearings; a meaningful opportunity to be heard, to include the opportunity to respond, explain and

defend; failed to allow Plaintiff the opportunity to confront witnesses, to include allowing Plaintiff the

opportunity to hear, respond to, and question and cross-examine witnesses, including his accuser; failed

to identify all of the evidence and witnesses relied upon by Defendants; failed to implement meaningful

and unbiased university policies and procedures; did not afford UNM employees adequate and

appropriate training of methods for investigating allegations of sexual misconduct; a prompt thorough

and impartial investigation; failed to provide an impartial and unbiased party to determine "Probable

Cause;" failed to provide an impartial hearing to determine "Probable Cause;" did not allow Plaintiff's

Counsel to represent Plaintiff's interests throughout the investigatory and sanctioning process, to

include not allowing Plaintiff's counsel to make argument, to examine witnesses, directly or by written

questions, to speak on behalf of the Plaintiff, or to take any other action as counsel for Plaintiff; and

failed to institute policies and procedures that protect the interests of both the accused student and the

accuser.  All of these actions, individually and collectively, establish a violation of Plaintiff's clearly

established due process rights. For these reasons, this Court should find that Defendants' qualified

immunity claims fail.

**3.    DEFENDANTS' SUBSTANTIVE ARGUMENTS MADE IN FOOTNOTES SHOULD BE WAIVED.**

This Court should find any substantive argument raised in a footnote not properly preserved

and thus waived. *In re C.W. Min. Co.,* 740 F.3d 548, 564 (10th Cir. 2014) (quoting *United States v.*

*Berry,* 717 F.3d 823, 834 n. 7 (10th Cir.2013)) ("Arguments raised in a perfunctory manner, *such as in a footnote,* are waived."). Notwithstanding this fact, Plaintiff has sufficiently alleged facts identifying the conduct of each of the individual defendants such that his claims against the Individual Defendants should survive a motion to dismiss.

## CONCLUSION

For the reasons stated above, this court should deny Defendants' Motion to Dismiss Plaintiff's Due Process Claims.

Respectfully Submitted By:

ADAMS+CROW LAW FIRM

By:   /s/Arlyn G. Crow
Arlyn G. Crow
Alana M. De Young
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, NM  87109
Phone: (505) 582-2819
Fax:     (505) 212-0439
Arlyn@adamscrow.com
Alana@adamscrow.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed using the CM/ECF system, which caused a copy to be sent by email to all counsel of record on this 25th day of May, 2018.

/s/ Arlyn G. Crow
Arlyn G. Crow