## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

J. LEE,

        Plaintiff,

                                          No. 1:17-CV-01230-JB-LF

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, and
GARNETT S. STOKES, in her official capacity
As the President of the University of New Mexico,

        Defendants.

### RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff J. Lee and hereby responds in opposition to Defendants' Motion for Summary Judgment [Doc. 70] and Memorandum Brief in Support of Defendants' Motion for Summary Judgment [71] ("Memorandum Brief") (collectively, "Motion").  Plaintiff's disputed facts demonstrate there is a genuine issue regarding whether Plaintiff received adequate due process in the University of New Mexico ("UNM") Office of Equal opportunity ("OEO") investigation and his expulsion from UNM when Plaintiff was never allowed to cross-examine his accuser and other witnesses, did not know all the evidence upon which OEO relied in coming to its conclusions, and never received a fair hearing before an impartial decision maker.  Rather, UNM OEO (Ms. Vele Buchs) wore the hats of investigator, judge, and jury, which resulted in an inherently biased "proceeding."  Further, the decision to expel Plaintiff was based on the preponderance of the evidence, even though it was a quasi-criminal matter, and considered charges related to underage drinking, despite Plaintiff never receiving notice about the charges.  Accordingly, a genuine issue of fact exists regarding whether UNM violated Plaintiff's due process rights before expelling him. For these reasons, Defendants' Motion should be denied.

### Response to Defendants' Statement of Undisputed Facts ("UFs")

Defendants' UFs are not undisputed material facts, but factual information reviewed by others who then reached their own factual conclusions.  This information cannot be used to support a motion for

summary judgment when the underlying information is disputed or contradictory. Specifically, Defendants conflate factual findings with alleged admissions made by Plaintiff, and ask the Court to consider whether Plaintiff—in fact—engaged in sexual misconduct based on this conflicting and contradictory testimony. Defendants ask this Court to affirm the OEO's factual conclusions based on evidence presented in the Motion rather than address the due process claims now before this Court.

Defendants' UFs present a swath of factual evidence on an issue not relevant to this case: whether Plaintiff is liable for sexual misconduct. This Court must decide wither Plaintiff's Due Process rights in the UNM OEO investigation were violated when OEO expelled Plaintiff without due process. Plaintiff does not ask the Court to—and the Court should not—redecide the case below and determine whether Plaintiff engaged in sexual misconduct. Thus, the only facts relevant are those related to the UNM OEO investigation, not the sexual misconduct allegations against Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (substantive law determines what facts are material at summary judgment stage).

Furthermore, Defendants present evidence that was not before the OEO or is inadmissible. Evidence not before OEO, such as audio recordings, the UNMPD Felony Supplemental Report, and Plaintiff's deposition, should not be considered when determining if Plaintiff's due process rights were violated: "Evidence or depositions that occurred or was examined after the university had already made its decision is beside the point." *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018). Furthermore, while evidence in support of a motion for summary judgment need not be presented in an admissible form, "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Accordingly, inadmissible hearsay evidence may not be considered during summary judgment. *Id.* For these reasons, and others identified in each Disputed Fact ("DF") below, Plaintiff disputes the following:

***The Alleged Sexual Assault on September 18, 2015***

DF No. 1. Plaintiff disputes UF No. 1 as irrelevant and immaterial because it does not go to whether

Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.

DF No. 2.  Plaintiff disputes UF No. 2 as irrelevant and immaterial because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.

DF No. 3.  There are disputed facts as to whether Plaintiff was locked in her car or if she locked herself in the car.  (Motion, Exhibit I, 6.)  Plaintiff does not dispute Officer Fisher wrote a report.  Plaintiff disputes that Office Fisher documented any taped interviews with Plaintiff and Mr. Goodnight in a police report, and Defendants cite no evidence demonstrating Officer Fisher's police report is a transcription of his taped interviews with Plaintiff and Mr. Goodnight and there is no evidence Defendants interviewed or spoke with Officer Fisher to discuss his report.  Plaintiff further objects to UF No. 3 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.  UF No. 3 also references evidence not considered by UNM OEO—the recorded police interviews with Plaintiff and Mr. Goodnight and Plaintiff's deposition—and, therefore, should not be considered by this Court.  Plaintiff, further, never had an opportunity to examine Officer Fisher about the statements he made in his report. (Jong Lee's Deposition Vol. II, November 13, 2019, attached as Exhibit 1, 304:4-306:8.)

DF No. 4.  Plaintiff objects to UF No. 4 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.  Plaintiff further objects to UF No. 4 as containing inadmissible hearsay within hearsay that would not be considered at trial.  Fed. R. Evid. 805. Notwithstanding and subject to the foregoing objections, Plaintiff disputes UF No. 4 because there are disputed facts as to whether Mr. Goodnight left to go to the bathroom.  (Motion, Exhibit C, 6; Motion, Exhibit J, 10.)  Further, Plaintiff never had an opportunity to examine Mr. Goodnight regarding whether he disclosed this during the OEO investigation.

DF No. 5.  Plaintiff objects to UF No. 5 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 5 also references evidence not considered by UNM OEO—the recorded police interviews with Plaintiff—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff disputes UF No. 5 and states there are disputed factual issues about whether Ms. Roe became "very intoxicated" and was "really drunk and staggering;" Mr. Goodnight was "holding her so that she didn't fall over;" and Ms. Roe was "very incoherent of what was happening" and unable to consent to sexual contact. (Exhibit 1, 282:12-286:23.  *See, generally*, Motion, Exhibit J.  Motion, Exhibit B at 1-2; I, at 2.)

DF No. 6.  Plaintiff objects to UF No. 6 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 6 also references evidence not considered by UNM OEO—the recorded police interviews with Plaintiff and his deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff disputes any allegations or implications that his sexual contact with Ms. Roe was not consensual.  (Exhibit 1, 282:9-284:18. *See also* Motion, Exhibit I, 2; Exhibit J, 16-17; Exhibit T, 6.)

DF No. 7.       Plaintiff objects to UF No. 7 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 7 also references evidence not considered by OEO—the recorded police interviews with Plaintiff, his deposition, and the UNMPD Felony Supplemental Report—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff states that these are disputed facts regarding the allegations. *See* DF No. 6.  (Exhibit 1, 285:17-286:18; 289:4-290:1. Motion, Exhibit J, 11.)

DF No. 8.       Plaintiff objects to UF No. 8 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations

prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 8 also references evidence not considered by UNM OEO—the recorded police interviews with Plaintiff, his deposition, and the UNM Felony Supplemental Report—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, Plaintiff disputes any allegations or implications that Ms. Roe did not consent to sexual contact.  (Exhibit 1, 277:15-278:25, 316:13-317:22.  Motion, Exhibit B, at 1-2.)

***The Investigation by the UNM Office of Equal Opportunity***

DF No. 9.       Plaintiff states that Exhibit D to the Motion speaks for itself.  Plaintiff disputes that the notification alerted Plaintiff that OEO would conduct an investigation and Plaintiff could be expelled for the alleged sexual assault when the notification did not provide notice that Plaintiff would <u>not</u> be entitled to a hearing on the alleged policy violation and did not provide notice of the possible sanction.  (Motion, Exhibit D.)  UF No. 9 also references evidence not considered by UNM OEO—Plaintiff's deposition— and, therefore, should not be considered by this Court.

DF No. 10.       Plaintiff objects to UF No. 10 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 10 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Plaintiff affirmatively states he is not raising an issue regarding whether his initial ban from UNM was in violation of his due process rights.

DF No. 11.       Plaintiff objects to UF No. 11 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  It is not material whether he met with Ms. Cordova or Ms. Cowan, whether he remembers the meeting, or the "OEO Claims Procedure" and "Analysis of Claims" because those documents did not alert Plaintiff to his potential expulsion or that he would not be afforded a hearing.  (Exhibit 1, 290:14-292:22; 293:20-294:3; 309:11-310:15.)  Plaintiff disputes that he actually

received the "OEO Claims Procedure" and "Analysis of Claims" documents or that he knew the process he was being subject to would decide whether he committed any acts of sexual misconduct. (*Id.* 299:24-301:1; 302:7-303:16.)  UF No. 11 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199.

DF No. 12.      Plaintiff objects to UF No. 12 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.  Plaintiff disputes the implication that Plaintiff knew the investigation would determine whether he would be expelled or sanctioned for alleged sexual misconduct. (Exhibit 1, 290:14-292:22; 293:20-294:3; 309:11-310:15. Motion, Exhibit H.)  UF No. 12 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199.

DF No. 13.      Plaintiff objects to UF No. 13 as irrelevant and immaterial as to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 13 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff does not dispute UF No. 13.

DF No. 14.      Plaintiff objects to UF No. 14 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249.  UF No. 14 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199.  Furthermore, UF No. 14 assumes facts not in evidence when it assumes UNMPD officers asked Plaintiff if Ms. Roe consented to a threesome, gave Plaintiff a hand job, and proceeded to give Plaintiff oral sex before Mr. Goodnight went to the bathroom. Fed. R. Civ. P. 56(c)(1)(A).  Notwithstanding and subject to the foregoing objections, UF No. 14 demonstrates there were conflicting stories regarding

6

the events of the night of the alleged assault that demonstrate Plaintiff should have received a hearing and an opportunity to cross-examine Ms. Roe and other witnesses during the OEO investigation.

DF No. 15.    Plaintiff objects to UF No. 15 as it references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the above objections, Plaintiff disputes the characterization of UF No. 15 that it was only Ms. Vele Buchs' tone that made the investigation biased. (*See* Motion, Exhibit A, 141:21-141:25.) Further, the OEO investigation was biased because Ms. Vele Buchs acted as investigator, judge, and jury; the proceedings occurred in secret without disclosure of the evidence considered or witnesses interviewed to Plaintiff; and Ms. Vele Buchs was hostile to Plaintiff after October 27, 2015. (Exhibit 1, 303:17-306:21.)

DF No. 16.    Plaintiff objects to UF No. 16 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249. UF No. 16 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, Plaintiff disputes the characterization that he did not dispute all of the statements identified in UF No. 16. On the contrary, Plaintiff merely affirmed that the last statements states "what it says" in the Preliminary Letter of Determination ("PLOD") rather than affirm its veracity. (Motion, Exhibit A, 157:4-18.) Further, the analysis the OEO investigator was to conduct was "whether the sexual activity was unwelcome and/or non-consensual, and if unwelcome or non-consensual, whether a reasonable person in the same or similar circumstances would have been aware the sexual activity was unwelcomed by and/or without consent from the Complainant at the time the alleged conduct occurred." (Motion Exhibit J, 15-16.) Furthermore, UNM Policy 2740: Sexual Violence and Sexual Misconduct states, "If a person is under the influence of alcohol or drugs such that he or she is unable to give meaningful consent or does not understand the fact, nature or extent of the sexual situation." (Policy 2740: Sexual Violation and Sexual Misconduct, attached as Exhibit

7

2, § 3.)

DF No. 17.       Plaintiff objects to UF No. 17 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 17 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff disputes UF No. 17 because the quotations from the PLOD are findings made during the OEO investigation—which are disputed by Plaintiff—not admissions by Plaintiff or Mr. Goodnight.  *See* DF Nos. 6-8.  (*See, generally*, Motion, Exhibit J.)

DF No. 18.       Plaintiff objects to UF No. 18 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 18 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Plaintiff further disputes the characterization that Ms. Roe did not have the capacity to consent to sexual conduct.  *See* DF No. 6.  Plaintiff disputes that Ms. Roe was too intoxicated to not consent or that she was drunk based on the amount of alcohol she consumed.  *See* DF No. 7.  Notwithstanding and subject to the foregoing objections, Plaintiff was only allowed to provide facts not discovered in the investigation (a large feat because the OEO did not inform Plaintiff of all information considered and witnesses interviewed) for his appeal and was not allowed to contest facts, provide context, or make argument in the factual supplement.  (*See* Student Grievance Procedure, attached as Exhibit 3, § 4.4(H).)  For that reason, the information in his appeal went to the issue of whether he knew or should have known if Ms. Roe was intoxicated, whether Ms. Roe had the capacity to consent, and whether Ms. Roe had a medical episode the night of the alleged assault.

DF No. 19.       Plaintiff objects to UF No. 19 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations

prejudiced Plaintiff. *Anderson*, 477 U.S. at 249. UF No. 19 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, OEO adopted the PLOD, which Plaintiff disputes, without a hearing or opportunity for cross-examination. (Exhibit 1, 318:6-319:7, 302:2-303:6.)

DF No. 20.     Plaintiff objects to UF No. 20 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249. UF No. 20 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, Plaintiff disputes any characterization that his statements to UNMPD are an admission of sexual misconduct, non-consensual sexual contact, or that Ms. Roe was too intoxicated to consent to sexual contact, and Plaintiff explicitly disputed facts in the Police Report in his Notice of Appeal. (*See* Motion, Exhibit M at 3, n.8.) Plaintiff further states the UNM President and Board of Regents had "discretionary authority" to review OEO determinations and would only accept review in "extraordinary circumstance." (Office of Equal Opportunity Discrimination Claims Procedure, attached as Exhibit 4, §VI.) Plaintiff did not have an automatic right to appeal. (*Id.*)

### The Sanctioning of Plaintiff by the UNM Dean of Students Office

DF No. 21.     Plaintiff objects to UF No. 21 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff. *Anderson*, 477 U.S. at 249. UF No. 21 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, Plaintiff does not dispute UF No. 21.

DF No. 22.     Plaintiff objects to UF No. 22 because it references evidence not considered by

UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Id.*  Notwithstanding and subject to the foregoing objections, Plaintiff disputes the characterization that he elected to proceed with an administrative hearing.  He did not receive an administrative hearing on whether he engaged in sexual misconduct.  Plaintiff only had the opportunity to have a "sanctions hearing," in which he was limited in the evidence he could present.  (Exhibit 1, 306:22-311:4.  Responses to Plaintiff's First Set of Requests for Admission to Defendant Board of Regents of the University of New Mexico, attached as Exhibit 5, at 1-10, 12.  Motion, Exhibits P, Q.)

DF No. 23.     Plaintiff objects to UF No. 23 because it references evidence not considered by OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff does not dispute UF No. 23.

DF No. 24.     Plaintiff objects to UF No. 24 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations prejudiced Plaintiff.  *Anderson*, 477 U.S. at 249.  UF No. 24 also references evidence not considered by UNM OEO—audio recordings of Plaintiff's police interview Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, the letter demonstrates there is a genuine issue of material fact regarding Plaintiff's level of intoxication and ability to consent to sexual contact.  *See* DF Nos. 5-8.  (Motion, Exhibit R.)

DF No. 25.     Plaintiff objects to UF No. 25 because it references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court.  *Argo*, 452 F.3d at 1199.  Notwithstanding and subject to the foregoing objections, Plaintiff disputes UF No. 25 because the sanction letter explicitly states that "the decision for [Plaintiff's expulsion]" is based on "full review and contemplation" of "[Plaintiff's] admission of purchasing alcohol and subsequently providing it to minors on the date of the incident."  (Motion, Exhibit S, 2.)

DF No. 26.     Plaintiff objects to UF No. 26 as irrelevant and immaterial to the issues in this case because it does not go to whether Plaintiff's due process rights were violated and whether such violations

prejudiced Plaintiff. *Anderson*, 477 U.S. at 249. UF No. 26 also references evidence not considered by UNM OEO—Plaintiff's deposition—and, therefore, should not be considered by this Court. *Argo*, 452 F.3d at 1199. Notwithstanding and subject to the foregoing objections, Plaintiff disputes he was never denied legal counsel. Ms. Chibanga explicitly stated legal counsel could not have an active role in Plaintiff's sanction hearing. (Motion, Exhibit Q.) Plaintiff's due process claim is based in part on OEO denying him the right to cross-examine witness and have a fair hearing by an impartial factfinder. Plaintiff was only permitted to appeal the FLOD and sanctions decision, not the underlying OEO process. (*See* Exhibit 3, § 4.4(D).)

***Claim of Violations of Due Process***

Plaintiff does not dispute UF Nos. 27-29 under the heading, "Claim of Violation of Due Process."

## Additional Material Facts ("AMFs")

Plaintiff submits the following AMFs that establish Defendants are not entitled to summary judgment as sought in their Motion:

AMF No. 1.    UNMPD never questioned Plaintiff regarding whether the alleged sexual contact with Ms. Roe was consensual, and Plaintiff never admitted the alleged sexual contact with Ms. Roe was not consensual. (Motion, Exhibits. B, B-1, C, C-1.)

AMF No. 2.    Plaintiff never admitted Ms. Roe was incapacitated—from alcohol or otherwise—and could not consent to sexual contact. (*Id.* Exhibit 1, 285:17-286:18.)

AMF No. 3.    The Dear Colleague Letter instructs universities to use a preponderance of the evidence standard in sexual misconduct proceedings because Title VII does not use any standard greater than a preponderance of the evidence. (Dear Colleague Letter, attached as Exhibit 6, at 10-11.)

AMF No. 4.    Under UNM's policies, a student charged with non-sexual misconduct may have (i) an administrative hearing in which the student may present evidence, question individuals, and participate in the hearing, or (ii) a formal hearing in which the student may respond to charges, present witnesses, and question witnesses. (*See* Exhibit 3, § 4.2(C)(iii), (iv). Exhibit 5, at 7-8, 10.)

11

AMF No. 5.    Under UNM's polices, the OEO investigates allegations of sexual misconduct and makes a finding of "No Probable Cause" or "Probable Cause" that a UNM student has engaged in sexual misconduct in a Final Letter of Determination ("FLOD").  (*See* Exhibit 3, § 4.4(B).)

AMF No. 6.    The OEO investigator determines which witnesses are credible, and the charged student is not able to question his accuser or any other witnesses, weigh in on the investigation; to attend witness examinations; or take any action to test the credibility or weight of any evidence reviewed by the UNM OEO investigator.  (*See* Exhibit 3, § 4.4(B).)

AMF No. 7.    A student may appeal a FLOD to the UNM President and Board of Regents, who will only accept the appeal in "extraordinary circumstances, such as those where proper procedure has apparently not been followed, where the decision appears to be unsupported by the facts, and/or where the decision appears to violate University Policy."  (Exhibit 4, § VI.)

AMF No. 8.    After a finding of Probable Cause, the OEO refers the case to Dean of Students Office for sanctions.  (*See* Exhibit 3, § 4.4(C).)

AMF No. 9.    The student has the option of an administrative hearing and formal hearing to determine the sanctions to which the student will be subject.  (*See* Exhibit 3, 4.2(A)(ii), (iii).)

AMF No. 10.   A student may appeal a sanctions decision on the grounds that the sanctions process was unfair or the sanction is grossly disproportionate the alleged violation of university policy.  (*See* Exhibit 3, § 4.4(D).)

AMF No. 11.   The OEO investigation was conducted pursuant to Article 4.4 of the Student Grievance Procedure, which did not allow for a formal hearing, a right to cross-examination, a right to confront and examine witness, and attorney representation.  *See* AMF No. 3.  (Exhibit 5, at 2-4.)

AMF No. 12.   Ms. Vele Buchs conducted the investigation, signed the PLOD, and signed the FLOD.  (Motion, Exhibit J, L.)

AMF No. 13.   Ms. Vele Buch almost immediately determined she did not believe Plaintiff and Mr. Goodnight's version of events.  (Email exchange between Laura Vele Buchs, Lydia Wolberg, Francie

Cordova, and Heather Cowan, dated February 8, 2016 – February 12, 2016, attached as Exhibit 7, at 2 (noting either Plaintiff or Mr. Goodnight "was less than truthful during the investigation, so I have a difficult time believing him now.")

AMF No. 14.    Ms. Vele Buchs did not interview the UNMPD police officers who interviewed Plaintiff, Ms. Roe, and Mr.  Goodnight the night of the alleged assault. (Motion, Exhibit J, 2.)

AMF No. 15.    Throughout the OEO investigation, Ms. Vele Buchs refused to disclose the name of the witnesses she interviewed and Plaintiff did not receive any recordings of the witness interviews.  (*See id.* (only identifying witnesses interviewed as "Witness 1" and "Witness 2").  Exhibit 5, at 5-6.)

AMF No. 16.    Plaintiff did not receive a hearing or opportunity to examine witnesses before Ms. Vele Buchs issues the PLOD.  (Exhibit 5, at 5-6.  *See also* Motion, Exhibit J, 2.)

AMF No. 17.    In the PLOD, Ms. Vele Buchs recognized that this case involves competing stories about the night of the alleged assault:

> [Ms. Roe] alleges she had consumed so much alcohol as to be incapacitated, and therefore, was unable to given consent to engage in sexual activity.  Respondents[, including Plaintiff,] affirm Complainant had consumed alcohol, but deny Complainant was incapacitated.

(*Id.* at 16.)  As described in the DFs, Plaintiff disputes these allegations.

AMF No. 18.    In her investigation, Ms. Vele Buchs, rather than being an impartial factfinder at a formal hearing, weighed the credibility of the witnesses:

> OEO finds the[] statements made by Respondents[, including Plaintiff, about Ms. Roes intoxication level] are not supported by witness statements and lack credibility….[OEO] finds Witness 2's statement confirms [Ms. Roe] express her desire to go home clearly enough for [Plaintiff] to understand her….OEO finds Witness 1's report that Respondent 1 reported identifying at the time he engaged in sexual activity with [Ms. Roe] that [Ms. Roe] was "too drunk" to have sex, further shows Respondents [sic] statements to OEO lack credibility.  As will be discussed below, UNMPD observations of [Ms. Roe] upon arrival at the scene on or about September 18, 2015, and that [Ms. Roe] was transported to the hospital by ambulance, further discredit Respondents', including Plaintiff] statements to OEO made for the purpose of this investigation.

> OEO also finds Respondents[, [sic] including Plaintiff,] statements made to OEO are significantly different from the statements Respondents provided to UNMPD on or about September 18, 2015, and Respondents' extemporaneous statements to UNMPD confirm

or corroborate critical elements of [Ms. Roe's] version of events….OEO finds UNMPD's observation that [Ms. Roe] was "intoxicated and not able to stand up" when they arrived at the scene, as recorded in the Supplemental report, corroborates Respondents'[, including Plaintiff,] statements made to UNMPD that [Ms. Roe] was very intoxicated and supports [Ms. Roe's] allegation that she was incapacitated….OEO also finds both witness statements support Respondents'[, including Plaintiff,] made to UNMPD and further corroborate [Ms. Roe's] version of events on or about September 18, 2015.  For these reasons, OEO finds Respondents'[, Plaintiff,] extemporaneous statements to UNMPD on or about September 18, 2015, are more credible than Respondent's[, [sic] including Plaintiff,] statements made to OEO for the purpose of this investigation.

(*Id.* at 16-18.)

AMF No. 19.   Ms. Vele Buchs did not find that Ms. Roe explicitly did not consent to sexual contact, but rather found Ms. Roe was too incapacitated to consent to sexual contact and Plaintiff should have known she did not consent to sexual contact, even though Ms. Roe claims she said "no" multiple times (*id.* at 4):

OEO finds Respondents' statements to UNMPD that [Ms. Roe] was "very intoxicated," had to be "held up/carried," had "trouble breathing/medical episode," had "trouble breathing/medical episode," and was dressed by [Plaintiff] demonstrate [Ms. Roe] was intoxicated to the point of incapacitation, and a reasonable person, in the same or similar circumstances, would understand [Ms. Roe] was intoxicated to the point of incapacitation… OEO finds [Ms. Roe] being taken from Lobo Village to a hospital by ambulance "due to her level of intoxication and incoherent state" further supports [Ms. Roe] was incapacitated.

…OEO finds the preponderance of the credible evidence shows [Ms. Roe] exhibited signs of incapacitation prior to engaging in sexual activities in [Mr. Goodnight's] bedroom.…OEO further finds there is no credible evidence of a subsequent statement of affirmative consent having been made by [Ms. Roe].…OEO further finds the preponderance of evidence shows [Plaintiff] knew, or reasonably should have known, [Ms. Roe] did not consent to him trying to put his penis in her mouth while she laid on [Mr. Goodnight's] bed because he confirmed to UNMPD she would not open her mouth for him to do so.

(*Id.* at 17-18.)

## **Standard of Review**

The Federal Rules of Civil Procedure allow summary judgment only upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If there is "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party," then summary judgment is not proper.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at

249.  Thus, if the evidence presented is open to multiple interpretations or inferences, summary judgment is improper.  *Hunt v. Cromartie*, 526 U.S. at 553, 119 S. Ct. 1545, 1552, 143 L. Ed. 2d 731 (1999).  "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Id.*

When determining whether a material issue exists, courts examine the facts in a light most favorable to the nonmoving party.  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538 (10th Cir. 1993).  Only "disputes over facts that might affect the outcome of the suit under the governing law" are relevant.  *See Anderson*, 477 U.S. at 248.  "That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Id.*

Here, Defendants have not demonstrated there is no material issue on Plaintiff's due process claims. Rather, the undisputed facts demonstrate Plaintiff was entitled to more due process than he received.  The OEO investigation involved a "he said/she said" situation, making credibility a key issue in the case. Nonetheless, Plaintiff was not given an opportunity to cross-examine Ms. Roe or even to know what questions were asked of Ms. Roe, other witnesses, or the other witness's identity.  Indeed, OEO never even disclosed all the witnesses it interviewed during its investigation.  The fact that the OEO did not hold a hearing, but rather had one person act as investigator, judge, and jury, making decisions about what to investigate, the admissibility of evidence, and witness's credibility, resulted in a bias proceeding that was fundamentally unfair.  The ultimate decision to expel Plaintiff was made on a preponderance of the evidence standard—too low for the property and liberty interests at stake—and consideration of underage drinking, despite Plaintiff never receiving notice that he would be sanctioned for such and the OEO never making a formal finding regarding the underage drinking, violated Plaintiff's due process rights.  Accordingly, summary judgment is improper.

## Argument

The government is required to provide due process before depriving a person of property and liberty interests.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Defendants do not dispute that Plaintiff has a

property interest in his continued enrollment at UNM, (Memorandum Brief at 15) and this Court has already determined Plaintiff has a liberty interest in his reputation.  (Amended Order [Doc. 53], entered May 30, 2019, 3.)  Case law further confirms Plaintiff has a liberty interest in his reputation and good name.  *Doe v. Northern Michigan University*, 393 F.Supp.3d 683, 693 (W.D. Mich. 2019) ("significant disciplinary decisions, such as suspension or expulsion, clearly implicate a protected property interest, and allegations of sexual assault may impugn a student's reputation and integrity, thus implicating a protected liberty interest" (internal quotation marks and alterations omitted)); *Doe v. Cummins*, 662 Fed.Appx. 437, 445 (6th Cir. 2016) ("the adverse disciplinary decision did, and continues to, impugn [the plaintiff's] reputation and integrity, thus implicating a protected liberty interest."); *Greenhill v. Bailey*, 519 F.2d 5, 8 (8th Cir. 1975) (holding deprivation of liberty interest when school denigrated the plaintiff's intellectual ability because it "imposed on him a stigma or other disability that foreclose(s) his freedom to take advantage of other opportunities" (alteration in original)); *Plummer v. University of Houston*, 860 F.3d 767, 773 (6th Cir. 2017) (students "have a liberty interest in their higher education"); *Doe v. DiStefano*, 2018 WL 2096347, at *4 (D. Colo. May 7, 2018) (unpublished) (finding liberty interest in reputation and right to education).  Indeed, the Supreme Court of the United States has held that due process is required for liberty deprivations where, such as here, "a person's good name, reputation, honor, or integrity is at stake."  *Goss v. Lopez*, 419 U.S. 565, 576 (1975).  Accordingly, Plaintiff was entitled to due process before UNM deprived him of his property interest in his continued enrollment at UNM and his liberty interest in his good name and reputation.

Once the Court determines a party has a property or liberty interested protected by the Constitution, the question then becomes to what due process was Plaintiff entitled?  This Court has specifically already determined that the due process required for sexual assault cases involving a "he said/she said" fact pattern and risk of expulsion is "the cross-examination of witnesses and presentation of evidence in [Plaintiff's] defense" at a "formal or evidentiary hearing."  (Amended Order [Doc. 53] at 3.)  The facts of this case, as shown in Plaintiff's DFs and AMFs, is analogous to the facts identified by this Court to support a formal,

evidentiary hearing, presentation of evidence, and cross-examination.  Further, this position is supported by federal case law.

     In determining what due process is required, courts apply the *Mathews* test and balance three factors: (1) the private interest to be affected—here Plaintiff's property interest in his continued enrollment at UNM and liberty interest in his good name and reputation; (2) the value of additional procedural safeguards in preventing an erroneous finding; and (3) the additional burdens that UNM would suffer from implementing the additional safeguards.  *See Watson ex rel Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) (citing *Mathews*, 424 U.S. at 334-35).  The risk of error increases in disciplinary proceedings, which in turn increases the need for procedural safeguards:

> Disciplinarians, although proceeding in the utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed.  The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost of interference with the educational process.

*Goss*, 419 U.S. at 580.  Thus, in student disciplinary cases, "requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action," and cross-examination may be crucial based on the case facts.  *See id.* at 583-84.

     Determining what procedural due process must be afforded to an accused is a fact intensive inquiry. *See Flaim v. Medical College of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005).  In cases such as this, in which a university "eliminates confrontation and counsel participation; allows one officer…to direct the investigatory, prosecutorial and adjudicative process; and relies on the lowest standard of proof, the integrity of its decision may be questioned and discredited." *Plummer*, 860 F.3d at 783 (dissenting opinion). Here, Plaintiff had a high interest in his property and liberty interests.  The main issue in the OEO investigation was whether Ms. Roe consented to sexual contact, a highly intensive fact inquiry. Accordingly, the risk of error was high.  The implementation of a proceeding involving a hearing, opportunity to cross-examine witnesses, and disclosure of all the evidence, by contrast, would have been a low burden on UNM.  UNM already provides hearings and the opportunity to cross-examine witnesses in

misconduct hearings that do not involve allegations of sexual misconduct.  (Amended Order [Doc. 53], 3

("UNM provides an evidentiary hearing in cases of alleged non-consensual misconduct."). AMF No. 4.)

Accordingly, it already has the ability to implement the procedural safeguards necessary to protect

Plaintiff's due process rights without suffering a large burden.   The probable value these additional

safeguards add of reducing an erroneous decision is high.   To receive due process, Plaintiff was entitled to

a fair and impartial hearing in which he could cross-examine witnesses, receive all the evidence uncovered

in the OEO investigation, defend his case after receiving notice of all the charges against him, and receive

a decision based on a proper standard of evidence.

I.      **PLAINTIFF'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE OEO DID NOT HOLD A HEARING OR GIVE PLAINTIFF THE OPPORTUNITY TO CROSS-EXAMINE WITNESSES.**

A crucial issue in this case is whether the OEO investigation violated Plaintiff's due process rights.

UNM's policies provide the OEO investigates all allegations of sexual misconduct without a hearing, and

if there is a finding of probable cause, then the Dean of Students Office issues a sanction.  (AMF Nos. 5-6,

8.)   Because the OEO Investigation resulted in Plaintiff being expelled without a hearing, it violated

Plaintiff's due process rights.   Furthermore, the OEO investigation turned on the issue of credibility because

it was a "he said/she said" case: the only witnesses were those involved in the underlying incident, and there

was no other direct evidence to shed light on the truth of what happened during the incident, save for the

statements made by the parties involved.   Thus, the main issue in OEO investigation was whose story to

believe—Plaintiff's or Ms. Roe's—making credibility a key issue, and Plaintiff was entitled to confront

witnesses through cross-examination.   In cases such as this, involving sexual assault, credibility issues, and

the risk of expulsion, Plaintiff was entitled to, at a minimum, a hearing; access to the evidence uncovered

in the OEO investigation, including the names of all witnesses interviewed; and the opportunity to confront

his accuser and cross-examine witnesses.

A.      **Due Process Required UNM OEO to Hold a Hearing to Determine Whether Plaintiff Violated University Policy.**

Federal law requires a hearing be held in university disciplinary proceedings about alleged sexual misconduct, especially if it is a "he said/she said" case.  Cases that involve a charge of misconduct, which "depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses," "requires something more than an informal interview with an administrative authority of the college."  *Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150, 159 (5th Cir. 1961).  Thus, "students facing suspension [or expulsion] and the consequent interference with a protected property interest must be…afforded some kind of hearing."  *Goss*, 419 U.S. at 579; *Haidak v. University of Massachusetts-Amherst*, 933 F.3d 56, 66 (1st Cir. 2019) (citing *Goss*, 419 U.S. at 579); *Baum*, 903 F.3d at 581 ("if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or suspension"); *Doe v. Hass*, --- F.3d --- , 2019 WL 6699910, *8 (E.D.N.Y. 2019) ("due process requires that a state or local government afford persons some kind of hearing prior to depriving them of a significant liberty or property interest" (internal quotation marks omitted)).  A hearing is crucial because it allows the factfinder to hear both sides of the case.  *Dixon*, 294 F.2d at 159.  Because Plaintiff was facing expulsion and serious deprivation of his property and liberty rights, he was entitled to have a hearing in the OEO investigation before an impartial factfinder.

Because Plaintiff did not receive a hearing or have the opportunity to cross-examine Ms. Roe or witnesses, the OEO investigation violated his due process rights.  (*See* AMF No. 16.)  Plaintiff also did not receive the name of the witnesses OEO interviewed during its investigation.  (*See* AMF No. 15.)  Thus, Plaintiff was unable to access or gather information necessary to defend against the allegation of sexual misconduct.  For example, there is no record of the questions OEO asked Ms. Roe or the witnesses, quotes of the statements Ms. Roe or the witnesses made, a description of the entire discussion between the OEO investigator and Ms. Roe and the witnesses, or a recording of OEO's interviews with witnesses.  (*See* AMF No. 15.)  Thus, there is no way to determine whether OEO probed Ms. Roe's memory for details or sought clarification of ambiguities.  The only evidence that the OEO investigation of Ms. Roe was thorough is Defendants' word, and that is insufficient.  (Memorandum Brief at 19.)  A "virtual embargo" on the

factfinder's ability to assess credibility because testimony was filtered through an investigator with virtually no direct quotations or indications of whether the accused questions were asked or rephrased "raises constitutional concerns." *Doe v. Pennsylvania State University*, 336 F.Supp.3d 441, 450 (M.D. Penn. 2018).

Regardless, this Court has already concluded that a due process violation likely occurred if all the allegations in the Complaint for Injunctive Relief and Damages [Doc. 1] are taken as true. Importantly, Defendants do not dispute any of the allegations in the Complaint for Injunctive Relief and Damages [Doc. 1] in their Motion. Rather, the Motion argues the facts that the OEO investigated and focuses on alleged admissions made by Plaintiff which are, in fact, findings of fact made by the OEO. In its Amended Order [Doc. 53], this Court found Plaintiff's "allegations plausibly support a finding that his sexual misconduct investigation resolved into a problem of credibility such that a formal or evidentiary hearing, to include cross examination of witnesses and presentation of evidence in his defense, is essential to basic fairness." (Amended Order [Doc. 53], 3.) "Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Sinfuego v. Curry County Board of County Commissioners*, 2018 WL 6047438, *14 (D.N.M. November 19, 2018) (unpublished). While courts may disregard the law of the case when a prior ruling is clearly erroneous, such is not the case here. *See id.* There is no indication—and Defendants do not argue—the Court's Amended Order is erroneous.

A single person determining what to investigate, what evidence is relevant or credible, and whether a student is guilty of sexual misconduct violates due process. Defendants cite to *Haidak* for the proposition this alleged "inquisitorial model" of fac finding does not violate due process. In *Haidak*, however, the plaintiff attended a hearing and submitted proposed questions for the factfinder to ask witnesses. 933 F.3d at 64. While the factfinder did not ask the questions exactly as submitted, he did ask questions intended to elicit the same information from the plaintiff's accuser. *Id.* Accordingly, the plaintiff's due process rights in *Haidak* were not violated, though the 1st Circuit stated it was a "close question." *Id.* at 70. Specifically,

the court noted that 20 of plaintiff's questions were removed before being the list of questions was given to the factfinder, which could have resulted in an ineffective cross-examination of witnesses. *Id.* However, because the factfinder probed the accuser's testimony for details and required clarification when necessary, due process was not violated. *Id.* at 70. In contrast, Plaintiff did not receive a hearing, Plaintiff was not given the opportunity to cross-examine witnesses, and there is no indication Ms. Roe was effectively questioned during the OEO investigation. (AMF Nos. 15-16.) Accordingly, the OEO investigation violated Plaintiff's due process rights and Defendants' Motion should be denied.

### B. Plaintiff's Due Process Rights Were Violated Because OEO Did Not Provide Him All the Evidence Uncovered in the OEO Investigation and Did Not Give Him an Opportunity to Cross-Examine Witnesses.

Because the OEO investigation involved a "he said/she said" fact pattern, the main issue was one of credibility, which necessitated giving Plaintiff an opportunity to cross-examine witnesses. Merely providing the accused an opportunity to respond in writing to point out inconsistencies in the accuser's statement is insufficient and does not negate the need for cross-examination. *Univ. of Cincinnati*, 872 F.3d at 401; *Baum*, 903 F.3d at 582 (6th Cir. 2018). "In cases…where everyone agrees on virtually all salient facts except one—*i.e.*, whether or not Ms. Roe consented to sexual activity with Mr. Doe—there is really only one consideration for the decisionmaker: credibility." *Pennsylvania State University*, 336 F.Supp.3d at 450. Indeed, the OEO explicitly made a credibility determination in finding Ms. Roe was more credible than Plaintiff: "OEO [found] [] statements by [Plaintiff were] not supported by witness statements and lack credibility," and other statements "corroborate [Ms. Roe's] version of events." (AMF No. 18.) If a case "resolves itself into a problem of credibility, cross-examination of witnesses might be essential to a fair hearing." *Doe v. University of Cincinnati*, 872 F.3d 393, 401 (6th Cir. 2017) (original alterations omitted) (citing *Flaim*, 418 F.3d at 641); *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021, 25 L. Ed. 2d 287 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *University of Cincinnati*, 872 F.3d at 396 ("failure to provide any form of confrontation of the accuser made the proceeding again John

Doe fundamentally unfair" given the "'he said/she said' nature of the case"); *Baum*, 903 F.3d at 581 ("when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination"); *Winnick v. Manning*, 460 F.2d 545, 550 (2nd Cir. 1972) ("if th[e] case [] resolve[s] itself into a problem of credibility, cross-examination of witnesses might have been essential for a fair hearing"); *Northern Michigan University*, 393 F.Supp.3d at 694 ("Cross-examination is essential to due process only where the finder of fact must choose between believing an accuser and an accused…Some form of witness questioning before the decision-maker would have allowed the [factfinder] to choose between competing narratives." (internal quotation marks)); *Donohue v. Baker*, 976 F.Supp. 136, 147 (N.D.N.Y. 1997) ("in light of the disputed nature of the facts and the importance of witness credibility in this case [due to the hearing testing the plaintiff's credibility against the defendant's credibility], due process required that the panel permit the plaintiff to hear all evidence against him and to direct questions to his accuser through the panel").

While the 10th Circuit has not ruled on the issue, the United State District Court for the District of Colorado has held that in cases "with the credibility of the parties in the investigation at issue…the lack of a full hearing with cross-examination provides evidence supporting a claim for violation of [the plaintiff's] due process rights." *Norris v. University of Colorado, Boulder*, 362 F.Supp.3d 1001, 1020 (D. Colo. 2019). Similarly, in another the United State District Court for the District of Colorado case, the court determined cross-examination was essential when the case turns on credibility of witnesses. *Neal v. Colorado State University—Pueblo*, 2017 WL 633045 (D. Colo. 2017) (unpublished). In *Neal*, a female student alleged that the plaintiff had raped Jane Doe. *Id.* at *1. Ms. Doe and the plaintiff, however, both indicated the sexual conduct was consensual. *Id.* The university conducted an investigation and the investigator interviewed the plaintiff. *Id.* at *3. The investigator provided his report to the university's director of diversity and inclusion, who held an informal disciplinary hearing. *Id.* At the informal hearing, the plaintiff learned the identity of some of the witnesses, but no testimony or documentary evidence was given. *Id.* at *3-4. The Unites States District Court for the District of Colorado determined the plaintiff should have

been given the opportunity to present witnesses and conduct cross-examination.  *Id.* at *23.  In so holding, the court noted, "The probative value of impartiality for avoiding erroneous decisions in unquestionably high; it is the bedrock for all procedures requisite to due process."  *Neal*, 2017 WL 633045, *22.  If each witness was able to speak with the factfinder, and the plaintiff was able to ask questions of the witnesses, "that would have made the allegedly erroneous decision less likely."  *Id.* at *23.  The plaintiff never admitted to sexual misconduct and, accordingly, he stated a claim that "the disciplinary proceedings resolve[d] into a problem of credibility, such that cross-examination of witnesses might have been essential to a fair hearing."  *Id.* at *25 (internal quotation marks and alterations omitted).  Such is the case here. Plaintiff never learned the identity of the all the witnesses to the OEO investigation, and never received the opportunity to cross-examine witnesses.  (AMF Nos. 15-16.)  If he had, the risk of an erroneous decision would have dramatically decreased.

Having a hearing before an impartial factfinder allows the factfinder to hear testimony at the same time, allow for cross-examination, evaluate witness's demeanor, and address conflicting testimony between witnesses in real time.  Conducting cross-examination at a hearing is essential because it allows the factfinder to "engage[] in an iterative process in which its questioning of [the accuser is] informed in real time by [the accused's] testimony as the proceedings unfold."  *Haidak*, 933 F.3d at 70.  It also ensures the factfinder evaluates both sides of the case.  *University of Cincinnati*, 872 F.3d at 40 (citing *Flaim*, 418 F.3d at 641).  "Evaluation of a witness's credibility cannot be had without some form of presence, some method of compelling a witness to stand face to face with the factfinder in order that it may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."  *Northern Michigan University*, 393 F.Supp.3d at 694 (internal quotation marks and alterations omitted); *University of Cincinnati*, 872 F.3d at 401 (a witness's behavior while being questioned can be critical to a factfinder).  More importantly, cross-examination is the best method to test credibility because it can expose gaps in memory, evasion, or bias by the witness.  *Id*; *Doe v. Brandeis University*, 177 F.Supp.3d at 605 (citing 3 Wigmore Evidence § 1367, p. 27 (2d ed. 1923)) ("cross-examination is beyond

any doubt the greatest legal engine ever invented for the discovery of truth" (internal quotation marks omitted)).

While Defendants cite to *Baum* for the proposition that Plaintiff was not entitled to cross-examine Ms. Roe because credibility was not at issue, *Baum* actually supports Plaintiff's due process claim against Defendants. *See also Norris*, 362 F.Supp.3d at 1001 (citing *Baum*, 903 F.3d 575 with approval). In *Baum*, the main issue was whether Ms. Roe had consented to sexual contact: Mr. Doe alleged she did and Ms. Roe alleged she did not. 903 F.3d at 579. The factfinders ultimately found Ms. Roe and her witnesses were more credible than Mr. Doe and expelled Mr. Doe. *Id.* at 580. Because Mr. Doe never had the opportunity to cross Ms. Roe during the investigative stage or before the factfinders, "there [was] a significant risk that the university erroneously deprived [Mr.] Doe of his protected interest." *Id.* at 582. In contrast, providing Mr. Doe a hearing and opportunity to cross-examine witnesses would not be a large burden; indeed, the court noted, the university provided such an opportunity in all other misconduct cases not involving sexual misconduct. *Id.* Similar to *Baum*, Plaintiff's due process rights were violated because the burden on UNM of holding a hearing and allowing Plaintiff to cross-examine witnesses is low, especially in comparison to Plaintiff's strong interest in his property and liberty interests and the strong likelihood that a hearing and cross-examination would reduce the risk of an erroneous decision.

### C.    Plaintiff Was Prejudiced by OEO's Violation of His Due Process Rights Because He Never Admitted to Sexual Misconduct.

Here, the fact that alcohol was involved and there were discussions of Ms. Roe's level of intoxication does not, in and of itself, mean Ms. Roe could not consent to sexual contact. The present case is also similar to *Doe v. University of Mississippi*, in which Mr. Doe and Ms. Roe had a sexual encounter while intoxicated. 361 F.Supp.3d 597, 603 (S.D. Miss. 2019). Mr. Doe admitted that Ms. Roe was intoxicated, but testified that Ms. Roe was coherent and able to walk. *Id.* at 613. Ms. Roe disputed that the sexual contact was consensual. *See id.* A hearing was held, but neither Ms. Roe nor any witnesses appeared. *Id.* at 612. The University argued Mr. Doe was not entitled to cross-examination because he

admitted Ms. Roe was intoxicated. *Id.* The court found, however, that Mr. Doe's admissions about Ms. Roe's intoxication *did not mean* Ms. Roe was incapacitated and unable to consent to sexual contact. *Id.* Furthermore, given the "he said/she said" nature of the case, the court noted that "giving [Mr.] Doe an opportunity to cross-examine Roe could have added some value to the hearing under the second *Mathews* factor." *Id.* at 612.

In this case, Plaintiff never admitted he had non-consensual contact with Ms. Roe or that Ms. Roe was too intoxicated to consent to sexual contact. Plaintiff may have made statements regarding Ms. Roe's level of intoxication, but he never indicated she did not consent to sexual contact or that she was too intoxicated to consent to sexual contact. UNM's policies required the OEO investigator to consider a number of factors to determine whether a person is too incapacitated to consent to sexual contact: "behavior like stumbling or otherwise exhibiting loss of equilibrium; slurred speech or word confusion; bloodshot, glassy or unfocused eyes; vomiting, especially repeatedly; being disoriented, or confused as to time or place; or loss of consciousness." (UNM Policy 2740, § 3.) Any alleged admissions to these underlying factors or to Ms. Roe's level of intoxication was not an admission of misconduct. As the policy states, "Intoxication alone, however, does not mean a person is incapable of consenting to sexual activity." (*Id.*) Rather, the OEO investigator was required to make a factual determination of whether Ms. Roe was too intoxicated to consent to sexual contact by weighing the factors listed in UNM Policy 2740. Because OEO made a factual determination after evaluating the credibility of witnesses, Plaintiff was prejudiced by not receiving an opportunity to cross-examine witnesses.

Because of the inadequate due process procedures, Plaintiff suffered substantial prejudice from UNM OEO's violation of his due process rights. To establish a due process violation, Plaintiff "must show substantial prejudice from the allegedly inadequate procedure." *Watson*, 24 F.3d at 1242. In determining whether prejudice exists, any alleged admissions are relevant. *Judeh v. Louisiana State University System*, 2013 WL 5589160, *6 (E.D. La. October 10, 2013) (unpublished) ("[A] plaintiff must demonstrate substantial prejudice in order to mount a successful due process claim and [] a student's admission to the

charges against him is relevant to determine whether such prejudice exists."); *Keough v. Tate County Bd. Of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984) ("To establish a denial of procedural due process, a party must show substantial prejudice," and any admissions are relevant "in determining substantial prejudice or harm").

Indirect statements regarding certain conduct is not an admission because any alleged admission must be direct and literally go to the issue of consent. In *Plummer*, the court did not have to consider competing narratives in reaching its decision. Rather, the female student did not remember anything from the night of the alleged assault and the primary evidence were videos and photos. 860 F.3d at 775. Thus, it was not a "he said/she said" case in which credibility was a key issue. In *Watson*, the plaintiff explicitly admitted to the disciplinary board that he assaulted his roommate because his roommate was Hispanic and Catholic. 242 F.3d at 1239. In *Flaim*, the plaintiff did not deny his felony conviction, for which he was expelled, and the case, therefore, did not revolve around the credibility of two competing narratives. 418 F.3d. at 641. The evidence presented in this case is distinguishable from the above cases because there is no direct evidence of misconduct, but factors and conclusory statements that may support a finding either way. Thus, the need for a hearing and cross-examination. Here, Plaintiff was substantially prejudiced by OEO's inadequate procedure because the OEO investigation did not result in a fair process before an impartial factfinder designed to uncover the truth of the what occurred the night of the alleged assault. Accordingly, Defendants' Motion should be denied.

II.   **PLAINTIFF'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE DID NOT HAVE A HEARING BEFORE AN IMPARTIAL DECIDER.**

Hearings must be "conducted with basic fairness," *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 725 (1st Cir. 1983); *Brandeis University*, 177 F.Supp.3d at 601, before an impartial decision maker, *see Northern Michigan University*, 393 F.Supp.3d at 694. Problems arise when a single party is investigator, prosecutor, judge, and jury. *Brandeis University*, 177 F.Supp.3d at 606. "No matter how well-intentioned, such a person may have preconceptions and biases, may make mistakes, and may reach

26

premature conclusions." *Id.* A neutral, third-party factfinder greatly reduces the risk of mistakes and erroneous decisions. *See id.* Without that separation, the OEO process in inherently bias because there is no neutral decisionmaker. Coupling the bias factfinder with the fact that Ms. Vele Buchs displayed a hostile attitude toward Plaintiff and almost immediately determined she did not trust Plaintiff and Mr. Goodnight's version of events as presented in their interview demonstrates Plaintiff did not have a fair and impartial proceeding and his due process rights were violated.

The dissent in *Plummer* provides a detailed discussion demonstrating the problems that arise when a disciplinary proceeding is not decided by an impartial factfinder. In *Plummer*, the investigator had several conflicting roles: "*advocating* for the female student, *investigating* the events, *prosecuting* [the defendants], *testifying* as a witness at their hearing, and *training* and *advising* the disciplinary hearing panels," resulting in him "assum[ing] the roles of prosecutor, jury and judge." 860 F.3d at 780 (dissenting opinion). The dissent, however, noted that an independent factfinder is needed to make independent findings to provide a plaintiff due process. *Id.* at 783 (dissenting opinion). The investigator cannot "conscientiously 'advocate'…while also conducting an impartial investigation of the accused students." *Id.* To the extend doing so "substantially lessen[s] the [factfinder's] factfinding and adjudicatory autonomy, the integrity of the process [is] compromised." *Id.*

Here, Plaintiff did not even receive a hearing before an impartial decisionmaker. Rather, one person advocated, investigated, and made final determinations as to whether the relevance of evidence, credibility of witnesses, and whether Plaintiff violated university policy. If a proceeding is not perceived as fair, because a person wears the hats of investigator, judge, and jury, then the proceeding is biased. "(F)airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Goss*, 419 U.S. at 580. An investigator making a decision on the merits (because there is no factfinder), results in a violation of due process: "Statements on the merits before the decision by those who must make factual determination on contested factual issues where the factfinding is critical would clearly suffice" to state a due process claim on bias. *Neal*, 2017 WL 633045 at *22 (alterations omitted). Ms. Vele Buchs almost

immediately determined she did not trust Mr. Goodnight or Plaintiff's version of events as presented in their interview, indicating she made a determination at the beginning of the investigation that Ms. Roe's version of events was correct.  Further, Ms. Vele Buchs was hostile and aggressive toward Plaintiff during his interview.  (DF No. 15.)  Plaintiff did not have an opportunity to observe any additional bias form Ms. Vele Buchs because she conducted her investigation and made her decision behind closed doors.  The secrecy of the OEO investigation by one person acting as investigator, judge, and jury who also displayed hostile toward Plaintiff resulted in an unfair and bias process.

The cases to which Defendants cite are inapplicable here.  Defendants' cases involve situations in which a factfinder was aware of the facts of the case before the final hearing—*see Mangels v. Pena*, 789 F.3d 836 (10th Cir. 1986) (factfinder's exposure to Internal Investigations and Inspection Bureau's report prior to the hearing did not result in bias)—or an employer made the initial decision to investigate an employee's misconduct and then terminated the employee—*Riggins v. Goodman*, 572 F.3d (10th Cir. 2009) (supervisor recommending termination and then meeting with employee before termination does not establish bias proceeding, especially when employee had two more hearings before different factfinders).

Similarly, *Doe v. Occidental College*—a state court case—is distinguishable from the present case because a factfinder separate from an investigator determined the plaintiff had violated university policy. 40 Cal.App.5th 208 (2019).  In *Occidental College*, an investigator made a threshold determination about whether there could be a violation—not a determination of guilt or credibility.  218.  Then, the university held a hearing before a panel of three people or an external adjudicator.  *Id.* at 219.  At the hearing, the parties were able submit questions to the hearing panel, which the hearing panel could then ask witnesses. *Id.*  The hearing panel ultimately decided whether a violation has occurred.  *Id.*  The court determined there was no bias in the proceeding.  *Id.* at 223-24.

*Hess v. Board of Trustees of Southern Illinoi University* is also distinguishable.  839 F.3d 668, 677 (7th Cir. 2016).  The 6th Circuit determined that even if the factfinder was biased, there was no harm because the plaintiff was able to appeal his case to a three-member panel, which reviewed the plaintiff's

28

expulsion.  *Hess* 839 F.3d at 677.  Furthermore, the plaintiff received appropriate procedural safeguards because he had a hearing, called witnesses, questioned witnesses, testified, and had counsel.  *Id.*  In contrast, here not only did plaintiff not have a hearing, not have the opportunity to question witnesses, and was subject to an intrinsically biased process, he also did not have an opportunity to adequately appeal (Plaintiff submitted a Notice of Appeal, but it was summarily denied without consideration of the underlying case). (DF No. 20.  AMF No. 7.)  Accordingly, Plaintiff's due process rights were violated because a neutral, impartial factfinder determined whether he violated university policy, and no appellate review of his case occurred.

III.     **PLAINTIFF'S DUE PROCESS RIGHTS WERE VIOLATED BY THE USE OF A PREPONDERANCE OF THE EVIDENCE STANDARD.**

Cases such as this one, involving sexual assault allegations and consequences that impact the remainder of the accused's life if he is found guilty, result in a concern about "the close association between the charges levelled against [the accused] and actual criminal charges."  *Plummer*, 860 F.3d at 784 (dissenting opinion).  While the consequences of being found to have been engaged in sexual assault at the university level are not as severe as criminal consequences, "they bear some similarities, particularly in terms of reputational injury."  *Brandeis University*, 177 F.Supp.3d at 602.  Thus, "[e]levating the standard of proof to clear and convincing, a rung below the criminal burden, would maximize the accuracy of factfinding."  *Plummer*, 860 F.3d at 783 (dissenting opinion).  The United States District Court for Colorado has recognized that "there is a fair question whether preponderance of the evidence is the proper standard for disciplinary investigations" involving sexual misconduct allegations.  *Doe v. University of Colorado, Boulder through Board of Regents*, 255 F.Supp.3d 1064, 1082 n.13 (D. Colo. 2017).

The Dear Colleague Letter instructs universities to use a preponderance of the evidence standard in sexual misconduct proceedings because Title VII does not use any standard greater than a preponderance of the evidence.  (AMF No. 3.)  Title VII, however, does not result in a permanent notation on a transcript that will affect Plaintiff's liberty interest in his good name and reputation for the rest of his life.  Plaintiff's

expulsion from UNM was a quasi-criminal proceeding, similar to fraud, that resulted in a notation on his transcript that will have lasting impact for the rest of Plaintiff's life.  Accordingly, clear and convincing is the proper standard of evidence.  *See Seidenberg v. New Mexico Bd. of Med. Examiners*, 1969-NMSC-028, ¶ 8, 80 N.M. 135, 452 P.2d 469 (recognizing that fraud claims carry a stigma and clear and convincing evidence is required).  Because the OEO made its determination based on the preponderance of the evidence, it violated Plaintiffs' due process rights and Defendants' Motion should be denied.

## IV.   PLAINTIFF'S DUE PROCESS RIGHTS WERE WHEN UNM CONSIDERED ALCOHOL AS A FACTOR IN DETERMINING PLAINTIFF'S SANCTIONS.

OEO violated Plaintiff's due process because he never received notice or an opportunity to be heard on the charge regarding underage drinking.  Consequently, he never had an opportunity to prepare or present a defense.  (Amended Order, [Doc. 52], 3 ("Lee did not receive notice that he faced sanctions for allegations related to underage drinking until his sanctions hearing, when it was too late to prepare an adequate defense").  Nonetheless, UNM considered the alleged underage drinking when making its decision to expel Plaintiff, and explicitly lists Plaintiff's provision of alcohol to minors as a reason for Plaintiff's expulsion: "I base my decision for your sanction(s) with full review and contemplation of the following information…Your admission of purchasing alcohol and subsequently providing it to minors on the date of the incident."  (DF No. 25.)

This case is like *Greenhill*, in which the plaintiff was suspended from medical school during his junior year after failing two clerkships.  519 F.2d at 6.  After an appeal and the suspension became final, the medical school completed a "change of status" form that indicated the plaintiff was suspended for "(l)ack of intellectual ability or insufficient preparation."  *Id.* at 7.  The plaintiff never received notice that his alleged lack of intellectual ability would be considered as grounds for his suspension and ultimate dismissal.  *Id.* at 9.  The 8th Circuit found that the plaintiff should have received written notice and an opportunity to be heard on such an allegation.  *Id.*  Similarly, here Plaintiff never received notice and an opportunity to be heard on the charge related to underage drinking because that was addressed at the

sanction hearing.  (*See* DF No. 25.)  Accordingly, his due process rights were violated when OEO considered underage drinking as grounds for his expulsion.

Defendants cite to *Watson* to support their proposition that OEO did not need to inform Plaintiff that underage drinking would be considered as an aggravating factor at Plaintiff'[s sanction hearing. *Watson*, however, is distinguishable from this case.  In *Watson*, the 10th Circuit determined Mr. Watson's due process rights were not violated despite the fact that Mr. Watson never received formal notice that he was charged with racism because racism was a motive for the assault for with Mr. Watson was expelled, not a separate charge for his expulsion.  242 F.3d at 1240.  In so holding, the 10th Circuit analyzed whether Mr. Watson was prejudiced and the burden on the school of notifying every student of perceived motives behind alleged misconduct.  *Id.* at 1242.  It found Mr. Watson admitted the assault was motived by racism— so he was not prejudiced—but the school would be severely burdened if it was "required to investigate possible motives for student misbehavior and set out those theories in the student's notice."  *Id.*

In contrast, OEO's finding regarding underage drinking did not go to the underlying motive of the case.  Underage drinking was not a motive for alleged sexual misconduct.  It was a completely separate charge against Plaintiff.  Nor was Plaintiff on notice that underage drinking would be considered by OEO. Indeed, OEO informed Plaintiff that the underage drinking <u>would not</u> be considered during the investigation.  Consequently, OEO never made a factual finding that Plaintiff provided alcohol to minors before Plaintiff's sanction hearing, and Plaintiff never given a chance to defend against the charges.  (*See*, *generally*, DR No. 17.)  Notice would have given Plaintiff the opportunity to defend against the allegations and explain the circumstances.  Failure to provide that notice resulted in a violation of Plaintiff's due process rights.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motion.

ADAMS+CROW LAW FIRM

By: */s/ Arlyn G. Crow*
Arlyn G. Crow
Alana De Young
Jacqueline K. Kafka
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, New Mexico   87109
Phone: (505) 582-2819
Fax:      (505) 212-0439
arlyn@adamscrow.com
alana@adamscrow.com
jackie@adamscrow.com
*Attorneys for Plaintiff J. Lee*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Response to Defendants' Motion for Summary Judgment was electronically filed through the CM/ECF system on the 23rd day of March, 2020, which caused all counsel of record to be served via electronic means.

ADAMS+CROW LAW FIRM

By: */s/ Arlyn G. Crow*
      Arlyn G. Crow